Strafford,
No. 6331.

STATE

*v.*

JOYCE E. MILLETTE.

December 29, 1972.

*Warren B. Rudman,* attorney general, and *Howard B. Myers,* attorney (*Mr. Myers* orally), for the State of New Hampshire.

*Paul J. Liacos,* of Massachusetts, and *Roger B. Phillips* (*Mr. Liacos* orally) for the defendant.

*R.J. Shortlidge, Jr.,* by brief and orally, for the New Hampshire Civil Liberties Union as amicus curiae.

GRIFFITH, J.   Two indictments charge the defendant with murder in the second degree, as a principal and an accomplice respectively, under the provisions of RSA 585:14 for a death allegedly resulting from a violation of RSA 585:12. A motion for particulars filed by the defendant was granted and the State then furnished a bill of particulars setting forth the acts charged. Defendant then moved to quash the indictments on numerous grounds and this was denied by the Trial Court, *Flynn,* J., subject to the defendant's exception. The questions of law raised by the denial were reserved and transferred by the trial court in advance of trial without objection by the State.

The defendant is a medical doctor and psychiatrist licensed to practice in this State. The indictment alleging her participation in the crime as a principal states in part that she "did commit murder in the second degree in that on May 30, 1970, she did wilfully administer to a pregnant

woman, one Mary Ellen Cann, without legal excuse a substance with intent thereby to procure the miscarriage of such a woman thereby causing the death of Mary Ellen Cann. RSA 585:12, RSA 585:14." The indictment charging the defendant as an accomplice states that she "knowingly and wilfully for the purpose of facilitating the commission of an offense, the procurement of an illegal miscarriage, (RSA 585:12)" gave knowledge and instructions and furnished instruments to the decedent and a third person. The State's bill of particulars alleges that the decedent suffered an induced miscarriage while she was approximately three and one-half months within her term of pregnancy so that the abortion charged was of an unquickened foetus in violation of RSA 585:12, a misdemeanor.

RSA 585:14, the statute upon which these indictments are based, provides that if a person causes the death of a pregnant woman by perpetrating or attempting to perpetrate either the felony of destroying a quickened foetus (RSA 585:13) or the misdemeanor of procuring the miscarriage of an unquickened foetus (RSA 585:12), "he shall be deemed guilty of murder in the second degree, and shall be punished accordingly."

Among the reasons urged by defendant to quash the indictments is the following: "New Hampshire RSA ch. 585:14 upon which this indictment is also based is unconstitutional in that it renders a defendant liable to adjudication of guilt of murder in the second degree solely upon a violation of RSA ch. 585:12 where death occurs without requiring an allegation, evidence or proof of the mens rea required for the crime of murder and further subjects such a defendant to the possibility of life imprisonment based only on the intent required for a misdemeanor (RSA 585:12) which carries a maximum term of one year or a fine of one thousand dollars or both."

It appears that these indictments are framed on the theory that RSA 585:14 defines a distinct homicide offense. Malice aforethought, long established as an indispensable element of the crime of murder by our cases (*State* v. *Pike,* 49 N.H. 399 (1870); *State* v. *Greenleaf,* 71 N.H. 606, 54 A. 38 (1902); *State* v. *Nelson,* 103 N.H. 478, 489, 175 A.2d 814, 822,

*cert. denied,* 369 U.S. 879, 8 L. Ed. 2d 282, 82 S. Ct. 1153 (1961)) and by our murder indictment statute (RSA 601:6), is not alleged in either indictment. In view of the structure of this State's homicide law consistently integrating, as it does, the specific measure of blameworthiness termed malice aforethought, we cannot agree that RSA 585:14 creates a separate and variant murder offense which does not include malice aforethought as an element.

There were no degrees of murder at common law. Our statute on murder established degrees primarily to distinguish capital homicide and left the definition of murder to the courts. RSA 585:1; 1 Wharton, Criminal Law and Procedure *s.* 241 (Anderson ed. 1957). Malice aforethought is an "unjustifiable, inexcusable and unmitigrated man-endangering state-of-mind" which involves "every attitude of mind which includes (1) an intent to kill, or (2) an intent to inflict great bodily injury, or (3) an intent to do an act in wanton and wilful disregard of an unreasonable human risk (i.e. the wilful doing of a wanton act under such circumstances that there is obviously a plain and strong likelihood that death or great bodily injury may result), or (4) an intent to perpetrate a dangerous felony." Perkins, Criminal Law 46-48 (2d ed. 1969); *State* v. *Pike, supra* at 404; *State* v. *Greenleaf, supra* at 614.

Mens rea in murder is more intelligibly expressed as "malice" without the addition of the word "aforethought" which adds nothing but confusion in view of the use of the statutory terms "deliberate and premeditated" in the definition of first-degree murder. *See* RSA 585:1; Perkins, Criminal Law, *supra* at 30. "[R]educed to its lowest terms, 'malice' in murder, means knowledge of such circumstances that according to common experience there is a plain and strong likelihood that death will follow the contemplated act, coupled perhaps with an implied negation of any excuse or justification." Holmes, C.J., in *Commonwealth* v. *Chance,* 174 Mass. 245, 252, 54 N.E. 551, 554 (1899).

The ancient ecclesiastical law of homicide harshly ruled that if a man accidently causes death because of a prohibited act, however remote from the death, the actor is liable for the death. Binavince, The Ethical Foundations

of Criminal Liability, 33 Fordham L. Rev. 1, 17 (1964). In the development of the common law, malice was always a necessary element in the crime of murder but in earliest times malice was imputed in all cases of homicide occurring in the commission of a felony. Moreland, Law of Homicide 14 (1952). "There has been, however, a tendency to retreat from the position that any felonious act must be murder, and rather to insist that for this result the act must be a dangerous one, assisted perhaps by the assumption that certain felonies such as arson, rape, robbery and burglary are inherently dangerous." Perkins, Alignment of Sanction with Culpable Conduct, 49 Iowa L. Rev. 325, 364 (1964); *People* v. *Pavlic,* 227 Mich. 562, 199 N.W. 373 (1924).

RSA 585:1 reads as follows: "All murder committed by poison, starving, torture, or other deliberate and pre-meditated killing or committed in perpetrating or attempting to perpetrate arson, kidnapping, rape, robbery, or burglary, is murder of the first degree; and all murder not of the first degree is of the second degree." This statute does not make murder out of homicide occurring in the commission of certain felonies but classifies as first degree any murder committed in perpetrating these felonies.

Neither the legislature nor our court ever adopted a presumption of malice from the commission of an unlawful act whether felony or misdemeanor. While language in our cases defining murder may be construed to presume malice from a homicide occurring during the commission of the named inherently dangerous felonies (*State* v. *Pike,* 49 N.H. 399 (1870); *State* v. *Greenleaf,* 71 N.H. 606, 54 A. 38 (1902); *State* v. *Thorp,* 86 N.H. 501, 171 at 633, *State* v. *Nelson,* 103 N.H. 879 (1961)) malice remains an indis-pensable element in the crime of murder. "Malice is not an inference of law from the mere act of killing; but like any other fact in issue, it must be found by the jury upon competent evidence." *State* v. *Greenleaf, supra* at 614. Our statute on indictments provides that it shall be sufficient in an indictment for murder to charge that "the defendant did feloniously, wilfully, and of his malice aforethought kill and murder the deceased, and in an indictment for man-slaughter to charge the defendant did feloniously kill and slay the deceased." RSA 601:6.

The new criminal code RSA 630:1 effective November 1973, essentially restates our common-law definition of murder with greater clarity and precision. Under this statute murder is committed if a person purposely or knowingly causes the death of another or causes death under circumstances manifesting extreme indifference to the value of human life. This latter is rebuttably presumed if the actor causes death with a deadly weapon while committing, attempting to commit or in flight after committing arson, burglary or any felony against the person. RSA 626:7 II. The code substitutes a precise definition of malice in murder for the phrase "malice aforethought" and eliminates any presumption of malice from inherently dangerous felonies unless death is caused by a deadly weapon.

The foregoing background of our law on homicide makes RSA 585:14 an anomaly if it is interpreted here as either directing a jury to find malice from a violation of a misdemeanor statute or dispensing with the element of malice in murder. We agree with the defendant's argument that if the former interpretation were adopted the statute might be constitutionally impermissible. *State* v. *Lapointe,* 81 N.H. 227, 123 A. 697 (1924); *Wilbur* v. *Robbins,* 349 F. Supp. 149 (D. Me. 1972). We do not reach the constitutional problem however since we are not convinced that interpretation of the statute under present conditions and in the light of our law on murder permits us to find that RSA 585:14 eliminates malice as an element of murder. *Compare State* v. *Ryan,* 70 N.H. 196, 46 A. 49 (1899).

Abortion of an unquickened foetus was not a crime at common law. Only the destruction of a quick foetus was punishable and then only as a misdemeanor. Perkins, Criminal Law, *supra* at 140. In *State* v. *McNab,* 20 N.H. 160 (1849), an indictment brought prior to the enactment of our abortion statutes charged the accused with causing the death of a woman by means used to procure an abortive childbirth. It was held that liability for the homicide above the degree of manslaughter could not be charged where it was not alleged that there was an intent to cause the death. The crime, it was said, was distinguished from murder by the absence of malice. The only abortion homicide case reported since the original enactment of RSA 585:12, 13 and 14 in

Laws 1848, ch. 743 was *State* v. *Wood,* 53 N.H. 484 (1873). In *Wood* the deceased woman was shown to be quick at the time the abortion was performed so that the defendant's acts constituted the felony (RSA 585:13). Yet the indictment did not rely on an imputation of blameworthiness or dangerousness and expressly alleged malice aforethought.

Neither of the above two cases compels any particular interpretation of RSA 585:14. Since statutes are enacted to deal with conditions in existence at the time of their enactment, we think it not improper in interpreting a statute for the first time over a century after its enactment to give some attention to the changes in conditions that have occurred in the intervening years.

Defendant points out that at the time of this statute's enactment, the early cases and statutes in other jurisdictions imputing malice to cases of death resulting from abortions reflected the factual context of the era. Resting upon a premise that malice may be implied from unlawful acts dangerous to life they had a solid basis in the inherent danger of abortions at that time. *See Commonwealth* v. *Parker,* 50 Mass. 263, 265 (1845); *State* v. *Moore,* 25 Iowa 128 (1869); *Smith* v. *State,* 33 Me. 48 (1851). *But cf. State* v. *McNab supra.* Early proscription of the practice of abortion primarily sought to protect pregnant women from risks present in all surgical procedures at that time. Both hospital abortion and childbirth at full term were fraught with deadly danger. Anesthesia and bacteria were discovered only at the time that our abortion statutes were passed. Antibiotics and bloodbanks are twentieth century developments. Tietze and Lewitts, Abortion, 220 Scientific American 3 (Jan. 1969). Defendant points out that the language of our statute is taken almost literally from the 1829 New York Penal Code. Indicative of the tenor of the times was an unenacted proposal in that code making surgical operations generally a crime unless necessary to preserve life.

While the foregoing may be an explanation for the language of the statute it does not require us to interpret this statute as dispensing with malice in a prosecution for murder where an unintended death resulted from commission of a misdemeanor. Holmes rudely stated "even a dog distinguishes between being stumbled over and being

kicked" (Holmes, The Common Law (1881)) and the universal recognition of the importance of intent permeates our system of law. Chief Justice Doe noted that "the criminal law does not generally accomplish its object by a conclusive presumption of mental guilt contrary to the fact" (*Lyons* v. *Child,* 61 N.H. 72, 73 (1881)) and we think it would be contrary to our law of murder to so interpret this statute. *See Bowdler* v. *Company,* 88 N.H. 331, 189 A. 353 (1937).

The indictments here fail to allege that the defendant killed Mary Ellen Cann with malice aforethought as provided by RSA 601:6 for all murder indictments. Under these indictments the State claims the right to convict of murder without proof of the element of malice they would be required to prove in every other indictment for murder. *State* v. *Greenleaf supra.* If possible a statute will be interpreted with the presumption that the legislature intended to confine its action within constitutional bounds. *State* v. *Lapointe,* 81 N.H. at 228, 123 A. at 693. In addition a statute must be construed as part of and in harmony with the law of which it forms a part. 82 C.J.S. Statutes *s.* 362 (1953). We do not construe RSA 585:14 as establishing a separate crime of murder unrelated to murder as elsewhere defined but rather as establishing a degree of murder as elsewhere defined by statute and common law.

The defendant is entitled to have her motion to quash granted. The State may indict and try the defendant for second-degree murder under RSA 585:14 provided it is prepared to allege and prove malice aforethought or it may indict and try the defendant for manslaughter under RSA 585:8, but it may not try the defendant under these indictments.

In view of the result reached we have not considered the other grounds of the defendant for dismissal of the indictments.

*Defendant's exception sustained; indictments quashed.*

All concurred.