Sullivan
No. 6202

STATE OF NEW HAMPSHIRE V. JOHN MITCHELL

October 31, 1973

*Warren B. Rudman,* attorney general, and *Henry F. Spaloss,* assistant attorney general (*Mr. Spaloss* orally), for the State.

*Olson, Reynolds & McMahon (Mr. Arthur Olson, Jr.,* orally) for the defendant.

DUNCAN, J. The defendant was convicted of the crime of

second degree murder following trial by jury, before *Johnson*, J., of an indictment charging the defendant with the murder of Susan Davis at Newport in March 1970. The defendant's exceptions to denial of his motion to suppress evidence of statements made by him to police before he was warned of his constitutional rights, and to denial of his motion to set aside the verdict of guilty, were reserved and transferred by the presiding justice.

Susan Davis was found shot in the left side of the head and lying dead on the floor of the defendant's filling station by police who were notified by radio to go there in response to information received from a young man who had returned from an errand for the defendant to find the defendant, gun in hand, crouched over Susan's prostrate body, and who had left at once to telephone the police. Upon their arrival the police found the defendant in an intoxicated condition, holding a telephone receiver in one hand and a bottle of liquor in the other, with his handgun upon a nearby desk. In response to the question "What happened?", the defendant replied, "Sue just shot herself".

The defendant was taken into custody and placed in a police cruiser, where he remained while other officers were summoned. While he was seated alone in the cruiser the defendant sought to speak to one of the officers who stood nearby, but the officer refused to talk with him. Soon afterward, he was heard to say "Oh, my God, what have I done now ... I hope I burn for this ...." The defendant was shortly thereafter taken to the police station with three officers present in the car. The testimony of the officers was that the defendant was not questioned upon the way to the station, but that he spontaneously repeated his previous statement.

Thus there was evidence to warrant a finding by the trial court that while there was brief general on-the-scene questioning of the defendant when the officers first arrived at the filling station, there was no interrogation after he was taken into custody in the police cruiser; and that his statements to the officers were voluntary and not the product of custodial interrogation. *State v. Scanlon,* 110 N.H. 179, 263 A.2d 669 (1970); *State v. Desjardins,* 110 N.H. 511, 272 A.2d

599 (1970). *See also Klamert v. Cupp,* 437 F.2d 1153 (9th Cir. 1970); *United States v. Littlejohn,* 441 F.2d 26 (10th Cir. 1971); Annot., 31 A.L.R.3d 565, 683-86 (1970). In contrast, *State v. Saunders,* 102 Ariz. 565, 435 P.2d 39 (1967), and other cases relied upon by the defendant, involved custodial interrogation, and are inapposite.

The evidence of the defendant's statements was not incompetent under principles established by *Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1966), and the motion to suppress was properly denied.

An examination of the record of the trial indicates that the defendant's contention that the state's evidence failed to establish the elements of the crime cannot be adopted. The allegations of the indictment complied with the requirements of RSA 601:6 (*State v. Millette,* 112 N.H. 458, 299 A.2d 150 (1972)), and although there was no eyewitness to contradict the testimony of the defendant, expert and circumstantial evidence coupled with the testimony concerning the defendant's past conduct and his relationship with the deceased warranted a finding beyond a reasonable doubt that the defendant committed the crime charged, and with the requisite malice. *State v. Nelson,* 103 N.H. 478, 175 A.2d 814 (1961); *Jewett v. Siegmund,* 110 N.H. 203, 263 A.2d 678 (1970); *State v. Geldart,* 111 N.H. 219, 279 A.2d 588 (1971); *see State v. Millette supra.*

The jury was warranted in finding that the defendant was involved in an illicit relationship with Susan Davis, a twenty-three-year-old divorcee with a young child to care for; that he was torn between responsibility and professed love for his wife and children on the one hand, and his attachment for Susan on the other; that he was desperate and despondent over the state of his business and financial affairs on the day of the tragedy; that in a state of intoxication he had given vent to his frustrations while his wife and Susan were engaged in a confrontation and scuffle at the filling station on the afternoon of the shooting by firing his revolver into a display case in the adjoining garage room; that he realized that his wife intended to seek a divorce, since she had then told Susan that "she could have him"; and that in a reckless resort to firearms such as had characterized his conduct pre-

viously, the defendant decided to free himself from Susan's persistent attentions which had led to his fall from grace, by ending their relationship with his gun. We hold that the verdict is sustained by the evidence and find no error in the denial of the motion to set it aside.

A memorandum filed by the defendant, pro se, after submission of the case in this court has suggested that Susan suffered a ruptured aneurysm at the base of the brain, leading to uncontrollable violence or anger on her part, and resulting in her suicide. This conjecture is without support in any evidence at the trial.

After careful consideration of the record, we are satisfied that the order must be

*Exceptions overruled.*

All concurred.