Rockingham
No. 6552

STATE OF NEW HAMPSHIRE v. LAWRENCE D. CONKLIN

June 30, 1975

*Warren B. Rudman,* attorney general, and *David W. Hess,* assistant attorney general *(Mr. Hess* orally), for the State.

*Alvin E. Taylor* and *Seth M. Junkins,* by brief and orally, for the defendant.

DUNCAN, J.   Defendant was indicted for murder in the first degree (RSA 585:1 (1955), Laws 1937, 20:1), for the stabbing of a security guard at the Rockingham County Jail, in Brentwood, on September 12, 1971. The defendant was then an inmate of the jail awaiting disposition of an unrelated offense. After arraignment but prior to trial, the State elected to forego a first-degree prosecution and to try the defendant only for the lesser included offense of murder in the second degree. RSA 585:1 (1955). By order of the Trial Court *(Perkins,* J.) the defendant was then arraigned on the reduced charge. Trial by jury resulted in a verdict of guilty of second-degree murder. Sentence was imposed for a term of not less than forty-five years and not more than life.

During the course of the proceedings, the defendant excepted to the arraignment on the second-degree charge without a new indictment, to rulings on certain pretrial motions, and the admission and exclusion of certain evidence, to certain instructions to the jury and to the denial of motions to set aside the verdict and to modify the sentence. These exceptions and the questions of law arising therefrom were reserved and transferred by *Perkins,* J.

Evidence to the following effect was introduced at trial. While awaiting grand jury action on another offense, the defendant was being retained in the "bound-over" section of the Rockingham County Jail. On September 12, 1971, the defendant requested cleaning supplies of the sole inside guard, Robert Prescott. Prescott, an experienced police officer, had been working at the jail for less than a month. Before passing a mop and bucket into defendant's cell row, Prescott secured the inmates in their individual cells, which were at times left open to permit communication among prisoners within a locked tier. However, when he later reopened the tier to furnish a broom, he neglected to lock the interior cells. The defendant slipped

out of the tier onto an open landing and refused to reenter. Prescott withdrew, but returned shortly with his privately owned German Shepherd police dog, which he kept at the jail during work hours. The dog apparently was to be used to coerce the defendant back into the tier. A struggle ensued; the dog was slashed about the throat, and Prescott was stabbed repeatedly in the chest and upper body. With keys removed from the guard, the defendant released inmates from other tiers. Medical help was sought for Prescott, who was carried into the visitors' cage of the jail. He had, however, died within five or ten minutes of the infliction of the wounds. The defendant was later apprehended while still within the confines of the jail.

The challenged indictment charged that the defendant "with force and arms, did commit a murder in the first degree, in that he deliberately and with premeditation, without justifiable cause, kill [sic] Robert Prescott . . . by stabbing him in the chest with a knife."

Defendant contends that the preliminary procedure followed by the trial court was defective in three principal respects: the indictment contained no allegation of malice to apply to the reduced charge; neither the State nor the court possessed the authority to try the defendant for a crime on which no indictment had been returned; even were such a procedure authorized, the defendant was prejudiced by having the indictment for the greater charge read to the jury.

It is established law that malice aforethought is an essential element of the crime of murder, and that an allegation to that effect must appear in the indictment. RSA 601:6; *State v. Millette,* 112 N.H. 458, 460-61, 299 A.2d 150, 152 (1972); *State v. Nelson,* 103 N.H. 478, 489, 175 A.2d 814, 822, *cert. denied,* 369 U.S. 879 (1961). The defendant concedes that the words "deliberately and with premeditation" satisfied that requirement for the indictment for first-degree murder. He argues however that the State's decision not to try him on the first-degree charge in effect amended the indictment by obviating those essential words, which under the statute in effect at that time were elements of first, but not of second-degree, murder. RSA 585:1 (Repealed; Laws 1974, 34:12 eff. April 15, 1974). So amended, the argument continues, the indictment alleged no malice which would support a charge of second-degree murder.

This "constructive amendment" theory misses the mark. RSA 585:1 defined murder in the first degree as "deliberate and premeditated killing", and second-degree murder as "all murder not of the first degree." Thus, in a prosecution for first-degree murder,

even upon a failure to establish premeditation and deliberation, the evidence could suffice for a jury to find murder of the second degree. In this respect, second-degree murder as defined by RSA 585:1, like manslaughter, constituted a lesser included offense of the crime of first-degree murder. *Nichols v. Vitek,* 114 N.H. 453, 321 A.2d 570 (1974); *In re Murray,* 131 Vt. 4, 8, 298 A.2d 835, 837-38 (1972); *Commonwealth v. Penn,* 444 Pa. 526, 282 A.2d 233 (1971). Where such a relationship exists, a defendant may properly be convicted of the lesser charge, on the basis of an indictment for the greater. *See* A.L.I. Model Penal Code § 1.07 (4) (1962); Federal Rules of Criminal Procedure, 18 U.S.C.A. Rule 31 (c) (1969); Barnett, *The Lesser-Included Offense Doctrine: A Present Day Analysis for Practitioners,* 5 Conn. L. Rev. 255 (1972). Since the defendant concedes the adequacy of the indictment on the greater offense, he cannot now complain of insufficiency as to the included offense. *State v. Doucet,* 106 N.H. 225, 208 A.2d 456 (1965). The indictment for the greater charge was legally sufficient to notify the defendant that he might be called upon to defend the lesser included charge. *Walker v. United States,* 418 F.2d 1116, 1119 (D.C. Cir. 1969); *People v. Ostrand,* 35 Ill. 2d 520, 530, 221 N.E.2d 499, 505 (1966).

Nor could the defendant suffer prejudice by the State's election to proceed only on the lesser offense of second-degree murder. The State's election benefited the defendant, by removing any possibility of a death sentence. Under such circumstances, it is held that the State may of its own accord abandon the charge of the greater crime and proceed with the prosecution of the lesser, and that no formal amendment of the indictment is required. *State v. Edwards,* 287 So. 2d 518, 525 (La. 1973); *Cox v. State,* 205 Kan. 867, 875, 473 P.2d 106, 113 (1970); 42 C.J.S. *Indictments and Informations* § 278 (1944). Twice arraigned, and fully aware of the State's decision in advance of trial, the defendant was not in doubt as to the offense with which he was charged and was sufficiently apprised of the factual basis for the indictment to prepare a competent defense. *State v. Greenwood,* 113 N.H. 625, 626, 312 A.2d 695, 696 (1973); *State v. Story,* 97 N.H. 141, 146, 83 A.2d 142, 147 (1951).

While the indictment for first-degree murder, including the words "deliberately and with premeditation", was read to the jury, the court expressly made it clear at that time that the jury was to consider only whether the defendant was guilty of second-degree murder. This was again emphasized in the charge to the jury, which was instructed only on the elements of second-degree murder and the lesser included offense of manslaughter. A review of the trial

record suggests no prejudice which could have resulted from the reading of the indictment.

The defendant alleges error in the admission in evidence of his statements made under the following circumstances. During the general securing of the jail after the stabbing, the defendant was approached by an armed State police trooper and told to enter a nearby cell. Without any questioning by the officer, he blurted out, "I had to do it. He was going to put the dog on me. I had to kill him." Subsequently, the defendant requested to speak to the deputy sheriff who was acting superintendent of the jail. As the defendant was being escorted to a separate room for that purpose, without any conversation from the deputy, he said, "Joe, I don't know why I killed him. Why did I?" Once inside the room, the defendant was for the first time advised of his constitutional rights. *Miranda v. Arizona*, 384 U.S. 436 (1966). He then proceeded to give a complete statement of the incident, without questioning or interruption, which was recorded in a police notebook and read at trial.

Under *Miranda v. Arizona*, 384 U.S. 436 (1966), it is clear that the prosecution may not use statements stemming from custodial interrogation unless safeguards to secure the privilege against self-incrimination were provided. However, since "[t]he fundamental import of the privilege while an individual is in custody is not whether he is allowed to talk to the police without the benefit of warnings and counsel, but whether he can be interrogated", a statement given freely and without any compelling influence is admissible in evidence. *Miranda v. Arizona, supra* at 478; *State v. Mitchell*, 113 N.H. 542, 543, 311 A.2d 134, 135 (1973). While there is little doubt that the defendant was at all times in custody, his statements were not the product of police interrogation. *State v. Collins*, 112 N.H. 449, 453, 298 A.2d 742, 745 (1972), *cert. denied*, 415 U.S. 982 (1974).

The defendant urges that nevertheless they were not voluntarily made, but were induced by fear and the threat of harm, inherent in the charged situation. Although police custody may generate subjective anxiety and pressures, it is not enough of itself to require *Miranda* warnings. *See* Kamisar, *"Custodial Interrogation" Within the Meaning of Miranda*, in Criminal Law and the Constitution 335, at 359 (1968). To determine whether a defendant's will was overborne, the totality of the surrounding circumstances must be examined. "While the state of the accused's mind, and the failure of the police to advise the accused of his rights, [are] . . . certainly factors to be evaluated in assessing the 'voluntariness' of an accused's responses, they [are] . . . not in and of themselves determinative". *Schneckloth v.*

*Bustamonte,* 412 U.S. 218, 227 (1973). In the instant case, there is no evidence of abusive or extraordinary treatment of the defendant while in custody, nor of trickery or cajolery on behalf of his custodians. The trial court did not err in admitting defendant's first two statements as voluntarily given without questioning, even in the absence of any *Miranda* warnings. Similarly, the record contains no indication that the statement secured after the defendant was advised of and had acknowledged his rights was coerced or rendered involuntarily.

There is likewise no merit in defendant's correlative contention that his blood-stained clothing, seized with that of all inmates during a general shakedown of the jail, was improperly received in evidence. "[T]o say that a public jail is the equivalent of a man's 'house' or that it is a place where he can claim constitutional immunity from search or seizure of his person . . . or his effects, is at best a novel argument . . . it is obvious that a jail shares none of the attributes of privacy of a home . . . ." *Lanza v. New York,* 370 U.S. 139, 143 (1962). The right of prisoners to be free from warrantless searches and seizures must be defined in the light of the requirements of official surveillance and security. *Palmigiano v. Travisono,* 317 F. Supp. 776, 791 (D.R.I. 1970); *United States v. Palmateer,* 469 F.2d 273, 274 (9th Cir. 1972). In the face of a killing and a possible riot or jail break, the seizure at the Rockingham County Jail on September 12, 1971, violated no constitutional rights of the defendant.

Defendant alleges error in the trial court's *voir dire* inquiry into possible juror prejudice should the evidence reveal that defendant had a prior criminal record. The defendant himself requested the inquiry but withdrew the request prior to examination. The court, however, chose to read the question on its own initiative, having found it necessary in the light of a proposed *voir dire* inquiry into jury opinion concerning the rights of prisoners in correctional facilities.

The extent of *voir dire* in this State, whether conducted by court or counsel, is wholly within the discretion of the trial court. *Patterson v. Corliss,* 112 N.H. 480, 486, 298 A.2d 586, 590 (1972); *Matthews v. Jean's Pastry Shop, Inc.,* 113 N.H. 546, 549, 311 A.2d 127, 130 (1973). The exercise of that discretion will not be disturbed unless it is manifestly against the law and the evidence. *State v. Comery,* 78 N.H. 6, 12, 95 A. 670, 673 (1915); *State v. Laaman,* 114 N.H. 794, 800-01, 331 A.2d 354, 358-59 (1974). Since the purpose and effect of the challenged question was to identify prejudice against the defendant, and defendant can point to no specific harm arising from its use, the court did not err in posing the hypothetical situation. *See* Annot.,

*Propriety and Effect of Asking Prospective Jurors Hypothetical Questions, on Voir Dire, as to How They Would Decide Issues of the Case,* 99 A.L.R.2d 7, 94, 97 (1965).

Although recognizing the trial court's broad discretion in admitting demonstrative evidence, defendant contends that discretion was abused by failure to allow a demonstration of a trained police dog under "attack" conditions. Defendant sought to introduce the evidence on the issues of provocation and self-defense. The dog, however, would not have been Officer Prescott's dog, nor would his training have been the same. Moreover, a courtroom demonstration could not duplicate conditions at the Rockingham County Jail on September 12, 1971. Absent substantial identity of circumstances, the court properly excluded the demonstration. *See* Comment, *Preconditions for Admission of Demonstrative Evidence,* 61 Nw. U.L. Rev. 472 (1966). So too, if the trial court found that the prejudicial effect of the proffered evidence might exceed its probative value, the evidence was properly excluded. *Shepard v. General Motors Corp.,* 423 F.2d 406, 408 (1st Cir. 1970).

Error is further assigned to the court's reading of a previously requested jury instruction on reduced responsibility owing to "extreme mental or emotional disturbance". After the court had instructed the jury in some detail that sufficient provocation could negate a finding of malice and so reduce murder to manslaughter, the defendant reiterated his request that the court incorporate the definition of manslaughter contained in Laws 1971, 518:1 (RSA 630:2 II), which was approved by the legislature before trial but had not yet become effective. Although the court complied, the defendant now complains that the failure to apprise him earlier that the request would be granted deprived him of the opportunity to emphasize that defense in closing argument. Since the defendant was not entitled to the instructions as of right, it provided him an advantage not then required by law. He may not now allege error because the advantage was not greater. *State v. Kelly,* 113 N.H. 222, 306 A.2d 58 (1973); *see State v. Warren,* 114 N.H. 196, 317 A.2d 566 (1974).

The defendant challenges the propriety of his sentence to "not less than forty-five years nor more than life imprisonment". RSA 585:4 (1955) in effect at the time of sentencing in May 1972, provided in part that "the punishment of murder in the second degree shall be imprisonment for life, or for such term as the court may order". The defendant argues that since this language is in the alternative, the court was required to impose a sentence either of life imprisonment, or of a term of years, and could not combine the two.

However this overlooks the provisions of RSA 607:20 (1955) which provided: "When a convict is sentenced to the state prison otherwise than for life, . . . the court imposing the sentence shall not fix the term of imprisonment, but shall establish a maximum and minimum term for which said convict may be held in said prison." Thus in fixing a sentence for a term other than that of life imprisonment, the trial court acted within the prescribed statutory ambits with the maximum set precisely at the longest term allowed. *See* RSA 607:21 (1955).

The defendant charges an abuse of discretion in fixing a minimum sentence for a term which operates to extend the date for parole eligibility beyond that designated for a life term only. He points out that under Laws of 1971, 419:3 a prisoner sentenced to a fixed term of life imprisonment would be eligible for parole after serving eighteen years or less. With a minimum sentence of forty-five years, however, he could not be released until he had served that term less good conduct credit, or after a term of perhaps twice eighteen years at the earliest. Laws 1971, 419:2, :6. Apparently with this in mind the defendant moved that sentence be imposed for a fixed term of life imprisonment only. The statutory distinction with respect to parole eligibility under a sentence for life imprisonment only, as compared with a sentence establishing maximum and minimum terms was not however a matter of legislative oversight, since the same provisions so far as applicable to this case were incorporated in the criminal code which became effective in 1973. RSA 630:1-b II; RSA 651:45, :45-a.

Construing the applicable statutory provisions as a whole, it is evident that the court was authorized to impose a sentence for a fixed term of life imprisonment, but otherwise was required to impose a sentence for no fixed term, but for one with maximum and minimum limits. In electing to follow the latter course as prescribed by RSA 607:20 (1955), the court did not abuse its discretion. The fact that the defendant's eligibility for parole would be governed by the minimum term imposed, rather than the maximum, could not operate to invalidate the sentence. The distinction in this respect between the fixed term of life imprisonment and a minimum term of forty-five years served to furnish greater flexibility in sentencing procedure. However, the statutes relating to parole did not control the sentencing authority of the court under pertinent penal statutes. *People v. Dixon,* 400 Ill. 449, 81 N.E.2d 257 (1948). On the facts of this case, it cannot be held as a matter of law that the trial judge erred in imposing the sentence of which the defendant complains. *See State*

*v. Streeter,* 113 N.H. 402, 407, 308 A.2d 535, 538 (1973); ABA Standards Relating to Sentencing Alternatives and Procedures, §§ 2.1 (d), 3.1 (c) (Approved Draft (1968)).

*Exceptions overruled.*

All concurred.