Hillsborough
No. 90-411

THE STATE OF NEW HAMPSHIRE

v.

DANIEL VANDEBOGART

August 20, 1992

108

*John P. Arnold*, attorney general (*William H. Lyons*, senior assistant attorney general, on the brief and orally), for the State.

*James E. Duggan*, chief appellate defender, of Concord, by brief and orally, for the defendant.

BROCK, C.J.  The defendant, Daniel VandeBogart, was convicted by a jury in the Superior Court (*Gray*, J.) of simple assault, RSA 631:2-a, and sentenced to serve twelve months in the Hillsborough County House of Correction. He appeals the conviction, claiming that the trial court erred by informing the jury panel during *voir dire* that he had been indicted for first-degree murder. For the reasons that follow, we affirm.

The defendant was initially found guilty on two misdemeanor charges, simple assault and criminal threatening, in the Manchester District Court on September 21, 1989, and appealed to the superior court for a *de novo* jury trial. At that time, the defendant was the subject of an investigation concerning the death of Kimberly Goss, of Londonderry. The misdemeanor charges stem from an unrelated incident. The record shows that the murder investigation received a great deal of media attention, some of which focused on the defendant and the fact that he was a parolee from Montana who had been convicted of three prior sex offenses.

A week before the defendant's trial was to begin, the defendant was indicted in Rockingham County for the first-degree murder of Kimberly Goss. The defendant moved for a change of venue, arguing that jury selection in such close proximity to the murder indictment and the intense media coverage surrounding it would prevent him from receiving a fair trial. The court denied the motion.

The following day, the defendant moved to dismiss the misdemeanor complaint and renewed his motion for a change of venue citing additional and more pervasive news coverage. In his motion to dismiss the defendant argued, among other things, that *voir dire* could not adequately ensure an impartial jury. According to the defendant, the usual questioning would not be sufficiently detailed to ferret out those jurors who were aware of the facts surrounding the murder indictment. On the other hand, more detailed questioning— "Do you know that Mr. VandeBogart is charged with first degree murder?"—would only exacerbate the problem. The defendant argued that the only possible way to *voir dire* the jury would be to ask each juror whether they had regularly read certain newspapers or listened to local radio and television news programs. If so, they would automatically be excluded. Given the impracticality of this method, the defendant urged the court to dismiss the case. The court denied the motion to dismiss, but delayed ruling on the motion to change venue until after first attempting to select a jury in Hillsborough County.

Jury selection began the following day. Prior to addressing the panel, the court told the defendant that it intended to inform the jury at the outset of *voir dire* that the defendant had been indicted for first-degree murder. The defendant objected, but the court proceeded to instruct the entire panel as follows:

> "As you know, we ask you certain questions to determine your partiality or impartiality, and we ask that you be candid with us in your answers. And the purpose of that, as you know, is to insure that we have a jury as impartial as the lot of humanity will allow us to have for any defendant. We ask you to be candid, and I will be candid with you.
>
> This particular defendant has been indicted in Rockingham County for the crime of first degree murder. The press coverage of that has been in the Manchester Union Leader and other newspapers and television stations and radio stations around the state. And I doubt if there are many of you in here who have not read something about it or

heard the name Daniel VanDeBogart [*sic*]. So I'll tell you up front that he is under indictment in Rockingham County for first degree murder."

The court further instructed the jurors that the murder indictment was not relevant in any way to the misdemeanor charges, and to disregard any opinions that they may have formed based on the knowledge that the defendant had been indicted for murder. Then, in the usual fashion, the court posed the standard questions, read the names of prospective jurors and asked whether they were aware of any reasons that they could not serve on the jury. The court dismissed thirteen jurors in the process of empanelling the jury. On appeal, the defendant argues that the court erred by informing the panel of the murder indictment.

██ It is a fundamental precept of our system of justice that a defendant has the right to be tried by a fair and impartial jury. N.H. CONST. pt. I, art. 15; U.S. CONST. amends. VI, XIV. "*Voir dire* examination serves to protect that right by exposing possible biases, both known and unknown, on the part of potential jurors." *State v. Goding*, 124 N.H. 781, 783, 474 A.2d 580, 581 (1984) (quotations and citations omitted).

> "'Whether or not a prospective juror is indifferent, for whatever reason his impartiality is questioned, is a determination to be made in the first instance by the trial court on *voir dire* . . . . It is then the duty of this court on appeal to evaluate the *voir dire* testimony of the empaneled jury to determine whether an impartial jury was selected.'"

*State v. Wellman*, 128 N.H. 340, 348, 513 A.2d 944, 949 (1986) (quoting *State v. Laaman*, 114 N.H. 794, 800, 331 A.2d 354, 358 (1974), *cert. denied*, 423 U.S. 854 (1975)).

██ "Under our system of jury selection, where the questioning of jurors is done by the court and not by counsel, the court owes a special duty to act on its own when counsel has alerted the court to special problems." *State v. Cere*, 125 N.H. 421, 423, 480 A.2d 195, 197 (1984). However, the choice of questions to be asked during *voir dire* is a matter within the sound discretion of the trial court. *See State v. Wright*, 126 N.H. 643, 648, 496 A.2d 702, 705 (1985). This court will not disturb the trial court's ruling "absent abuse of discretion or a finding that the trial judge's decision was against the weight of the evidence." *Wellman*, 128 N.H. at 348, 513 A.2d at 949–50.

In this case, the defendant informed the trial court of the unusual circumstances and problems associated with selecting an impartial

jury. The court responded with venire questions and instructions addressing the potential prejudicial effects of the publicity. The issue is whether the court's decision to inform the entire panel of the defendant's murder indictment and then to question the jurors as to whether they could fairly consider the evidence in the misdemeanor cases ensured that the jury was impartial. While the question of jury impartiality "is difficult to define precisely in the abstract," *Wellman*, 128 N.H. at 348, 513 A.2d at 949, we find that the court's ruling in this case was not an abuse of discretion.

First, the defendant argued to the court that, because of the pervasive news coverage, most of the jurors already knew about the defendant's murder indictment. He submitted newspaper articles discussing the indictment and represented to the court that radio and television news programs were giving the case substantial coverage. This evidence, indicating a widespread awareness of the murder indictment, justified the court's decision to confront the problem directly at the outset of the venire process. Heeding the evidence, the court highlighted for the jury the most difficult problem confronting them in terms of their ability to remain impartial. The court was then able to explain to the jury immediately the legal principles they would have to understand and apply in order to ensure that the defendant was afforded a fair trial. By directly referring to pretrial publicity, the court emphatically informed the panel of their duty to be impartial and gave them an opportunity to express any reservations or doubts in this regard.

The court's decision to inform the prospective jurors of the murder indictment was not contrary to the law. As a general rule, a showing by the defendant that jurors have gained knowledge or awareness through the news media of the facts and circumstances surrounding the case is not enough to conclude that a juror is biased.

> "'In these days of swift, widespread and diverse methods of communication, an important case can be expected to arouse the interest of the public in the vicinity and scarcely any of those best qualified to serve as jurors will not have formed some impression as to the merits of the case. This is particularly true in criminal cases. To hold that the mere existence of any preconceived notion as to guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.'"

*Laaman*, 114 N.H. at 800, 331 A.2d at 358 (quoting *Irvin v. Dowd*, 366 U.S. 717, 722–23 (1961)). Thus, because it was apparent that many of the prospective jurors were aware of the defendant's murder indictment, the court was obliged to determine that the jurors on the panel either had no preconceived opinions concerning the defendant's guilt on the murder or misdemeanor charges, or that they were able to disregard such opinions. That having been done, the defendant has the burden to show prejudice. *State v. Conklin*, 115 N.H. 331, 337, 341 A.2d 770, 775 (1975); *Laaman*, 114 N.H. at 802, 331 A.2d at 358.

■■ We have previously recognized that pretrial media coverage of a case can result in either inherent or actual prejudice. *Laaman*, 114 N.H. at 798, 331 A.2d at 357. "[I]nherent prejudice . . . exists when the publicity by its nature has so tainted the trial atmosphere that it will necessarily result in" an unfair trial. *Id.* Actual prejudice "exists when the publicity has infected the jurors to such an extent that the defendant cannot . . . receive[ ] a fair and impartial jury trial." *Id.* This case implicates the latter concern. In such instances, "the defendant must show that the nature of the opinions formed by the jurors as a result of the publicity are such that they cannot be set aside by the jurors to enable them to render a verdict based on the evidence presented in court." *Id.*

We note at the outset that the defendant failed to provide a record of the colloquies between the trial judge and the thirteen prospective jurors who were dismissed for cause. Consequently, the defendant is hard pressed to show on appeal that the nature of the jurors' opinions necessarily prevented them from setting such opinions aside.

■ The defendant attempts to show prejudice in two ways. First, he claims that by informing the entire panel that the defendant had been indicted for murder, the court denied the defendant any chance of empanelling a juror who had no knowledge of the murder indictment. This argument is unavailing. The rule requiring the court to disqualify only those jurors who have formed adverse opinions, and are unable to disregard them, clearly implies that the defendant has no right to demand a jury be comprised, to any specific degree or proportion, of jurors who have no knowledge of prejudicial facts prior to trial.

The second and more compelling allegation is that the media coverage and the indictment referred to in the court's venire question did not concern the case at issue. Rather, they involved an unrelated murder charge and are, therefore, according to the defendant, akin

to one involving admission of prior bad acts evidence. We acknowledge the concern that because the information divulged in the press and the indictment mentioned by the court concern a separate crime, the trial process did not afford this defendant an opportunity to dispel any misinformation or address the facts surrounding the murder indictment. Cf. Puiatti v. Dugger, 589 So. 2d 231 (Fla. 1991) (when juror is aware through news media that defendant confessed to crime, no need to disqualify juror if confession will be introduced at trial).

Nevertheless, we conclude that the non-evidentiary information of the murder indictment communicated by the trial court is not equivalent to the introduction of prior bad act evidence. "Since the purpose and effect of the [court's statement] was to identify prejudice against the defendant, and the defendant can point to no specific harm arising from its use, the court did not err in" informing the jury. Conklin, 115 N.H. at 337, 341 A.2d at 775 (voir dire question hypothetically raising defendant's criminal record held not erroneous when intended to reveal prejudice in the event that defendant's record is revealed at trial); see also Lister, 122 N.H. at 605–06, 448 A.2d at 397 (court's decision to reveal to panel fact that defendant had escaped from prison not improper where jury would inevitably notice defendant's absence from trial). In sum, given the evidence of pretrial publicity, and consistent with the law concerning juror impartiality, the court essentially acknowledged the jurors' awareness of the murder indictment in order to deal effectively with the problems attendant upon that knowledge.

We are also sufficiently assured by the trial court's additional instructions and voir dire questions that the jury was impartial and that the defendant received a fair trial. See State v. Hunter, 132 N.H. 556, 561, 567 A.2d 564, 568 (1989) (jury presumed to follow court's instructions). Immediately following the revelation of the indictment, the court instructed the jury as follows:

> "As you have been told in the general instructions, an indictment means nothing. The defendant in that case and in this case is presumed to be innocent. And that indictment and those charges in Rockingham County have nothing whatsoever to do with the charges on trial today, not a thing. There is no connection whatsoever.
>
> The defendant has filed motions to ask this Court to change venue in this case because of concerns of having a fair jury, being able to be tried by an impartial jury. The fact that

some of you may know of Mr. VanDeBogart [*sic*] or his name or of the charges in Rockingham County does not automatically disqualify you.

On Tuesday or Monday, I guess, Judge Dunn reviewed and heard the motion to change venue and denied that motion. I heard it yesterday and denied the motion with the thought that we will attempt to have a fair and impartial jury for Mr. VandeBogart in this case, these two charges, before you today. If we are unable to do so, we will send the case to some other county for trial.

So I'm going to ask you certain questions, pretty much the standard questions that you are asked in any criminal case, and you've been here for several weeks now, and you are familiar with the questions, I know.

And I want you to be candid with me, with Mr. VanDeBogart [*sic*], and with the State in answering the one particular question, that if you know of the pending charges in any other county, will that in any way affect your ability to sit as an impartial juror on the cases before the Court today.

. . . .

We as Americans are in the business of fair trials. If you can't have a fair trial in this county, then obviously it is unfair to try him in this county. If you cannot sit as a juror on this case and disregard the fact that I have just told you of the indictments in some other county for other offense, first of all, that's understandable that you couldn't do that, but it's important that you let us know.

You have to divorce yourself from any thoughts concerning anything you may have read or heard about any other charges in any other counties. It is of constitutional importance that you do that.

If you can't, as I say, it's understandable, but we don't want jurors up here that think, 'Well, he is indicted for some other crime in some other county, and therefore he must have done this.' That's not what we are all about as Americans. That's not the way we try cases. That's not the way we give defendants a fair trial.

And I'm sure you all know this. I just want to impress on you more in this case than in any other case you will probably sit on during your term here this month.

If you cannot in your own conscience say to yourself and to Mr. VanDeBogart [*sic*], 'I'll look you in the eye and give you a fair trial, and if the State doesn't prove it, I'll find you not guilty,' if you can't do that, and you can't do that honestly, for God's sake let us know, because it would be so unfair to him, to the State, to the court system, and to yourselves as citizens to do otherwise."

The court then asked the usual *voir dire* questions and in the course of selecting the jury dismissed thirteen panelists. After completing the selection, the court again asked:

"[H]aving in mind everything I told you this morning, everything you probably know of having read in the papers, anything else that is going on in your mind, do any of you have any problem whatsoever in giving this individual on these charges a fair trial and returning a fair verdict?"

None of the jurors indicated that they would be unable to do so. We find that these extensive instructions to the jury were sufficient to cure any potential prejudice, and that, indeed, an impartial jury was empanelled.

Accordingly, we hold that the defendant has failed to show actual prejudice and that the trial court's decision to inform the panel of the defendant's murder indictment, in light of the circumstances of this case and considering the venire process as a whole, was not an abuse of discretion.

*Affirmed.*

All concurred.