Coos
No. 93-576

THE STATE OF NEW HAMPSHIRE

v.

WILLIAM WEIR, JR.

July 19, 1994

*Jeffrey R. Howard*, attorney general (*Joseph N. Laplante*, assistant attorney general, on the brief and orally), for the State.

*Twomey & Sisti Law Offices*, of Concord (*Nicholas K. Holmes* on the brief and orally), for the defendant.

THAYER, J.    The defendant, William Weir, Jr., was convicted on five counts of felonious sexual assault, RSA 632-A:3, II (1986), after a jury trial in Superior Court (*Fauver*, J.). The defendant argues that the trial court violated his right to a fair and impartial jury by refusing to disqualify one juror and by disqualifying another. We affirm.

The jurors in question will be referred to as Juror A and Juror B, respectively. Both jurors were selected after *voir dire* conducted by the trial court. As part of the selection process, the court read to the prospective jurors ten indictments against the defendant: five counts of felonious sexual assault for sexual contact with a girl between the ages of thirteen and sixteen years of age, and five counts of aggravated felonious sexual assault for the same acts but with the additional allegation of the use of physical force and violence. The trial court then questioned the panel of prospective jurors as to potential biases regarding witnesses or the subject matter of the trial. Neither juror at issue had any problem with the questions or statements propounded by the trial court in *voir dire*.

The defendant bases his claim on both the State and Federal Constitutions. Because we believe the principles are the same, *see State v. Smart*, 136 N.H. 639, 646, 622 A.2d 1197, 1202, *cert. denied*, 114 S. Ct. 309 (1993), and because we believe that the New Hampshire Constitution provides at least as much protection as does the Federal Constitution on this issue, we address the defendant's claims under State law, looking to federal law only for guidance. *See State v. Ball*, 124 N.H. 226, 232, 471 A.2d 347, 351 (1983).

"It is a fundamental precept of our system of justice that a defendant has the right to be tried by a fair and impartial jury." *State v. VandeBogart*, 136 N.H. 107, 110, 612 A.2d 906, 908 (1992). RSA 500-A:12, II (1983) states that "[i]f it appears that any juror is not indifferent, he shall be set aside on that trial." If a juror is found to be disqualified at any time before or during the trial, he should be removed from further service. *See State v. Wong*, 138 N.H. 56, 67–68, 635 A.2d 470, 477–78 (1993). Indifference or impartiality "is not a technical conception. It is a state of mind." *Irvin v. Dowd*, 366 U.S. 717, 724 (1961) (quotation omitted). "The trial court's determination of the impartiality of the jurors selected, essentially a question of

demeanor and credibility, 'is entitled . . . to special deference.'" *Smart*, 136 N.H. at 653, 622 A.2d at 1206 (quoting *Patten v. Yount*, 467 U.S. 1025, 1038 (1984)). As such, the trial court's determination on this issue will only be reversed for an abuse of discretion or upon a finding that the decision was against the weight of the evidence. *Wong*, 138 N.H. at 67, 635 A.2d at 477.

■ We first address the defendant's contentions regarding Juror A. Before trial commenced, Juror A reported to the trial court that she had informed her knitting instructor that she might not be in class the week of the trial because "I'm going to be on jury duty again, and it looks like it might be a pretty horrendous case." The knitting instructor responded that her son, a State trooper, might have been the arresting officer. Juror A told her instructor that she did not believe it was the same case. The prosecutor, who knew the instructor's son by name, confirmed that he was not involved in the case at all. The trial court conducted a colloquy to determine whether the juror would be biased as a result of her conversation with her instructor. Juror A replied consistently that her conversation would not affect her impartiality.

Juror A also reported to the court that her instructor had said that if it were up to her, "I'd hang him by . . . ." In response to questioning by defense counsel, Juror A, however, said that "I don't even know if she was talking about the [defendant], because [the police officer involved in the case] is not her son." The following colloquy ensued:

"[DEFENSE COUNSEL]: Can you—can you assure me that even though this acquaintance of yours made this statement that you will be able to totally put that aside —

THE JUROR: Uh huh, definitely.

[DEFENSE COUNSEL]: —and decide these facts on the case and on the testimony?

THE JUROR: On the facts, period.

[DEFENSE COUNSEL]: And not upon—

THE JUROR: Anybody else's prejudgments, yes.

[DEFENSE COUNSEL]: Obviously we're talking about your knowledge of a relative of a state trooper. Do you think that all policemen tell the truth all the time?

THE JUROR: No.

[DEFENSE COUNSEL]: Can you envision circumstances under which policemen may lie or not tell the truth or be mistaken?

[THE JUROR]: Well, they probably tell it as you see it, which you may see in a different light or someone else may see in a different light. . . . I hope they tell the truth.

[DEFENSE COUNSEL]: I think we all hope that. But can you envision circumstances where they would make an outright lie in court?

THE JUROR: I don't know. I would have to say I hope not. That's as much as—as far as I can go. I'll never know and neither will you if they're telling the truth fully."

Defense counsel moved to strike Juror A for cause. The trial court again questioned Juror A regarding her impartiality, and she stated that she presumed the defendant innocent "until someone else proves differently. If so—. . . beyond a reasonable doubt." She also replied that she could proceed impartially and without prejudgment. The trial judge denied the defendant's motion to strike, stating that he had carefully observed Juror A's demeanor and listened to her answers, and that he was

"satisfied that this juror has the ability and the willingness to apply the Court's instructions on a presumption of innocence of this defendant and the requirement constitutionally that this defendant is presumed innocent until the State presents sufficient evidence to convince the jury that he's guilty beyond a reasonable doubt. I think that she is capable . . . of rendering a fair verdict [and] . . . that this juror knows her duties and responsibilities and will . . . honor that charge. So I'm not going to disqualify her."

The defendant argues that the trial court erred in refusing to strike Juror A, contending that she had: (1) formed a belief that the case was "horrendous" before any evidence had been presented; (2) discussed the case with others after the jury had been empaneled; (3) been told by an acquaintance that the defendant was guilty and should be severely punished; (4) failed to reveal on *voir dire* that she does not believe that police officers ever knowingly testify falsely; and (5) made contradictory statements during *voir dire*.

The defendant's first and third contentions boil down to an argument that Juror A had prejudged the defendant. The record does not support this argument. Juror A's comment to her instructor that it "might be a pretty horrendous case" does not, as the defendant suggests, reflect that the juror prejudged the case before hearing any evidence, but rather reflects only what the jury pool was told by the judge; namely, that the case involved ten counts of sexual

assault, including counts charging forcible anal, vaginal, and oral intercourse. It would be a strange juror indeed who would not suspect that the evidence to come might be somewhat horrendous.

■ As for the instructor's comment regarding punishment of the defendant, Juror A stated that she did not know if the instructor was even referring to the case that she was sitting on, and that it would not sway her own opinion as to the defendant's guilt or innocence. To be indifferent, a juror need not come into the trial with no information or impression of the nature of the case. "It is sufficient if the juror can lay aside [her] impression or opinion and render a verdict based on the evidence presented in court." *State v. Laaman*, 114 N.H. 794, 800, 331 A.2d 354, 358 (1974). The trial judge, who listened to all of Juror A's responses and was able to view her demeanor and assess her credibility, did not abuse his discretion in finding that Juror A need not be excused.

■ The defendant's second contention is that because Juror A disobeyed the trial court's admonition not to discuss the case, she could not be counted upon to follow the trial court's instructions for the remainder of the trial. The defendant complains that the trial court "did not appear to give this evidence any weight in its decision to deny the defendant's motion to strike" Juror A. We disagree. The trial court specifically found that Juror A would be able to follow his instructions, that she knew her duties and responsibilities, and that she would honor the charge to presume the defendant innocent until proven otherwise beyond a reasonable doubt. This finding was neither an abuse of discretion nor against the weight of the evidence.

■ The defendant's fourth and fifth contentions relate to Juror A's statements regarding her perception of the honesty of police officers. The defendant argues that her statements were contradictory and reflected a bias in favor of believing the truthfulness of police officers as a class. We disagree. Juror A was asked two relevant questions during the initial *voir dire* of the jury panel: "Do you believe that a police officer is more likely to be truthful than other witnesses?" and "Do you understand that the testimony of a police officer is entitled to no special consideration merely because it comes from a police officer?" She stated that she had no problem with either of these questions. During the colloquy entered into just before the trial began, she was again asked, "Do you think that all policemen tell the truth all the time?" She replied, "No." When questioned as to whether she could envision circumstances under which a policeman may lie, Juror A replied that she "hope[d] they tell the truth,"

and that she hoped that they wouldn't lie in court, but "[t]hat's as much as — as far as I can go. I'll never know and neither will you if they're telling the truth fully." Taken in context, these statements are not contradictory and do not show a juror biased toward believing the testimony of a police officer. The trial court did not abuse its discretion in refusing to remove Juror A from the panel on this ground.

We now turn to the defendant's arguments concerning Juror B. During the trial, the trial court learned from the prosecutor and the court clerk that a probation officer had recognized Juror B's name on the jury list, and that the probation officer had told them, among other things, that the juror, a former junior high school teacher, had made sexual advances toward the probation officer's stepdaughter, that the probation officer and other parents had complained to the school board, and that the juror had been fired or forced to resign. The trial court conducted a *voir dire* of Juror B in chambers. Juror B stated that he had resigned from the school system because he "[h]ad a disagreement with the school system over handling some of the students," and because of a stress-related illness. When the court asked if there had been any allegations made about him with respect to female students, Juror B replied, "No, and I know what kind of allegations that you are meaning, sexual contact. No." He also assured the court that he could be impartial, and that no reason existed to excuse him from the jury. The prosecutor then asked if, during the juror's employment as a school teacher, there had been "any questions raised as to your involvement with female students?" Juror B replied, "Yes." He stated that he had been friendly with both male and female students and that frequently students would sit in his classroom after school ended at 2:15 p.m., talking with him sometimes until 3:30 or 4:00 p.m. The principal and superintendent "didn't like that approach." He stated that he knew of no complaints made by parents, but that the principal had spoken with him.

After this colloquy, the trial court allowed Juror B to remain on the jury for the balance of the day. The following day, the trial court found that Juror B was not qualified and excused him from the jury. The court provided the following basis for its ruling:

> "Based on what I observed yesterday, including [Juror B]'s acknowledgment that he was being criticized for meeting after school with his students — being criticized apparently by the administration, and based on the statements of . . . an officer of this Court, which based on his own knowledge of the complaint which was made to the administration and the

subsequent decision of [Juror B] to resign, leads to the strong inference that although he may not have committed any acts of sexual impropriety with the students, that he was well aware that charges were being made against him by the administration of the school."

■■■■ The defendant argues that the trial court erred in relying upon the hearsay reports of the probation officer's complaint to the school district. We disagree. A trial judge "has the discretion to question a juror whose qualifications have been called into doubt during trial in order to resolve such matters as they arise and ensure an impartial and competent jury." *United States v. Campbell*, 845 F.2d 782, 785 (8th Cir. 1988). "In fact, he should carefully investigate every source which would be calculated to throw any light upon the competency of a juror, and if the judge is not entirely satisfied of the competency of the juror, such juror should be excused." 47 AM. JUR. 2d *Jury* § 211 (1969). Here, the information provided to the trial judge by the prosecutor and the court clerk, based upon the probation officer's report that a juror had been subject to complaints regarding female students of similar age as the victim, raised a serious question about the juror's impartiality which the judge did not err in investigating. *See Campbell*, 845 F.2d at 785–86. This investigation consisted of questioning the juror. The judge, who was in the best position to judge Juror B's credibility and demeanor, determined that Juror B was not qualified to serve as a juror. While the better procedure may have been for the trial court to question the probation officer directly, we do not find that the trial court abused its discretion in considering the reports given by the prosecutor and the court clerk of the probation officer's complaints to the school district. Juror B's own statements corroborated much of the information in the reports. Juror B admitted to having been criticized for his involvement with female students of similar age as the victim. While he denied that any allegations had been made, he knew that the allegations in question concerned sexual contact. He conceded that he resigned from his position in part because of a disagreement with the school system regarding his "handling of some of the students." Based upon this record, we cannot find that the trial court abused its discretion.

*Affirmed.*

BROCK, C.J., did not sit; the others concurred.