USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 94-2117 UNITED STATES, Appellee, v. RAFAEL GASTON-BRITO, Defendant - Appellant. ____________________ No. 94-2118 UNITED STATES, Appellee, v. DANIEL NU EZ, Defendant - Appellant. ____________________ APPEALS FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Juan M. P rez-Gim nez, U.S. District Judge] ___________________ ____________________ Before Torruella, Chief Judge, ___________ Cyr and Stahl, Circuit Judges. ______________ _____________________ Henry F. Furst for appellant Daniel N ez and Richard Ware ______________ ______________ Levitt for appellant Rafael Gast n-Brito, were on joint brief. ______ Jos A. Quiles-Espinosa, Senior Litigation Counsel, Criminal _______________________ Division, U.S. Attorney's Office, with whom Guillermo Gil, United _____________ States Attorney, was on brief for appellee. ____________________ August 30, 1995 ____________________ -2- TORRUELLA, Chief Judge. Daniel N ez ("N ez") and TORRUELLA, Chief Judge. ___________ Rafael Gast n Brito ("Brito") appeal from jury convictions of conspiracy to possess cocaine with intent to distribute and possession of cocaine with intent to distribute, in violation of 21 U.S.C. 841(a)(1) and 846. Both Brito and N ez claim that the district court erred when it failed to investigate an alleged instance of jury misconduct, and that this failure necessitates a new trial. For the following reasons, we reverse. DISCUSSION DISCUSSION The focus of this case was a drug-trafficking ring bringing cocaine from Puerto Rico to New York. The facts came to light when one of the drug couriers, Harry Benjam n D az ("D az"), was arrested and agreed to cooperate with the government. D az offered detailed testimony that, from January 19, 1993 to January 26, 1993, he participated with N ez and Brito in several successful and unsuccessful efforts to transport cocaine from Puerto Rico to New York. In the course of his detailed testimony, D az testified that on January 25, 1993, N ez paid him $15,000 for successfully delivering a load of cocaine to New York. During cross-examination, counsel for N ez asked D az whether the government had required him to return the $15,000 N ez allegedly had given him. D az then testified that his wife had been forced to give the money to unnamed persons, and that the money was therefore no longer in his possession when the -3- government asked him to surrender it. Specifically, he testified: I was asked to [turn over the money], but when [the government] asked me my wife had already told me they had ordered her to give it to them. Who ordered it I don't know, but they ordered it and if she did not turn it over they threaten to kill the little girl, but who ordered it I don't know. Immediately following this testimony, counsel for Brito requested permission to approach the bench. He informed the court that when D az was asked to identify the person or persons who had taken the money from D az' wife, Steve Riley, the Case Agent sitting at the prosecution table, made a hand signal pointing to the defense table.1 Counsel then moved for a mistrial. The court immediately denied the motion. Appellants now claim that the district court erred in refusing to declare a mistrial without first investigating the alleged incident to determine whether it had been seen by the jurors. Juror misconduct claims fall under two broad subheadings: juror bias and improper juror contacts. "Both are at the core of the Sixth Amendment's right to a trial by an impartial jury, free from prejudicial contact. Private  ____________________ 1 Counsel for Brito described the gesture to the court, stating: The way I saw it was the Agent that is sitting between two counsel -- the Agent Mr. Riley -- he has his hands crossed in his chest, and [when] the question was asked for the second or third time, the last time -- when I made the objection -- he simply pointed his first finger at the defense table. -4- communications with a deliberating juror create the concern that the juror may reach a verdict on the basis of the matters communicated, rather than the trial evidence." United States v. _____________ Day, 830 F.2d 1099, 1103 (10th Cir. 1987). Thus, although the ___ appellants do not allege any wilful misconduct on the part of the jurors themselves, we analyze their claim here under the broad rubric of juror misconduct because the alleged incident created a risk that the jurors were prejudiced by facts not in evidence. The law on the subject is well settled. "When a non- frivolous suggestion is made that a jury may be biased or tainted by some incident, the district court must undertake an adequate inquiry to determine whether the alleged incident occurred and if so, whether it was prejudicial." United States v. Ortiz- _____________ ______ Arrigoit a, 996 F.2d 436, 442 (1st Cir. 1993). United States v. __________ ______________ Boylan, 898 F.2d 230, 258 (1st Cir.), cert. denied, 498 U.S. 849 ______ ____________ (1990); United States v. Anello, 765 F.2d 253, 258 (1st Cir.), _____________ ______ cert. denied, 474 U.S. 996 (1985); United States v. Corbin, 590 ____________ _____________ ______ F.2d 398, 400 (1st Cir. 1979). The district court has "broad, though not unlimited, discretion to determine the extent and nature of its inquiry into allegations of juror bias." Corbin, ______ 590 F.2d at 400. Thus, although the trial court must "conduct a full investigation to ascertain whether the alleged jury misconduct actually occurred," United States v. Doe, 513 F.2d ______________ ___ 709, 711-12 (1st Cir. 1975), it has "discretion to determine the extent and type of investigation requisite to a ruling on the motion [for mistrial.]" Id. at 712. __ -5- Our previous cases have "abjure[d] imposition of a rigid set of rules for the conduct of inquiries into the presence or extent of extrinsic influences, [noting] that the kaleidoscopic variety of possible problems counsels in favor of flexibility." Boylan, 898 F.2d at 258. Thus, ______ [s]o long as the district judge erects, and employs, a suitable framework for investigating the allegation and gauging its effects, and thereafter spells out his findings with adequate specificity to permit informed appellate review, his "determination that the jury has not been soured deserves great respect [and] . . . should not be disturbed in the absence of a patent abuse of discretion." Id. (quoting Hunnewell, 891 F.2d at 961) (other citations ___ _________ omitted). The circumstances of this case invoke a more stringent standard, however, because the appellants alleged an ex parte _________ communication by a government agent with the jurors. "Any unauthorized communication between jurors and persons associated with the case is presumptively prejudicial" and obligates the court to "conduct a sufficient inquiry to determine whether the communication was harmless." United States v. O'Brien, 972 F.2d _____________ _______ 12, 14 (1st Cir. 1992). See also Remmer v. United States, 347 _________ ______ ______________ U.S. 227, 229 (1954) (ex parte communication, contact, or _________ tampering with a juror during the trial about a matter pending before the jury is presumptively prejudicial). Under these circumstances, the appellants' claim was clearly non-frivolous and obligated the court to undertake an adequate inquiry to -6- determine whether the alleged incident occurred and if so, whether it was harmless. The district court failed in this obligation, as it denied the motion for a mistrial without any investigation. It neither questioned the Case Agent nor voir dired the jurors to determine whether the Case Agent had made the alleged gesture, or if he had, whether any of the jurors had seen it. Instead, the district court summarily concluded that even if the incident had occurred, no harm had inured to the defendants. Such a conclusion, however, cannot stand unless supported by an adequate inquiry, for an unauthorized communication between a juror and someone associated with the case is "deemed prejudicial" unless it is completely unrelated to the case or otherwise shown to be harmless. O'Brien, 972 F.2d at 14; see also Day, 830 F.2d at _______ _________ ___ 1104 (10th Cir. 1987) (restroom communication between juror and federal agent seated at prosecution table was merely a "casual, time-of-the-day greeting" and, although improper, was found to be harmless). Here, although the communication alleged was clearly connected to the case, the district court made no effort whatsoever to see if it was in fact harmless. Moreover, regardless of the presumptions employed, the alleged communication clearly posed a danger of prejudice. Counsel for Brito claimed that the Case Agent's gesture had implicated N ez as the unnamed person who, by threats to her daughter, forced D az' wife to return the $15,000 D az had been paid for his courier services. If the gesture in fact occurred -7- and was seen by the jurors, they might impermissibly have included it in the calculus of their deliberations. Further, we note that the gesture was allegedly made by the Case Agent, whom the jury might reasonably have presumed to have access to inside information. Thus, had the alleged gesture been observed and understood to suggest the defendants' complicity in the threats to D az' family, the jury might well have given it substantial credence. It may well be that the gesture was never made, or if it was, that no jurors saw it; but if such was the case, it was the district court's obligation to develop the relevant facts on the record, not merely presume them. As the Supreme Court explained in Smith v. Phillips, 455 U.S. 209, 212 (1982), "[d]ue _____ ________ process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen." The district court's failure to conduct a sufficient inquiry clearly deprived appellants of this right, and therefore requires that their convictions be vacated.2 Reversed and remanded. _____________________  ____________________ 2 Because we vacate the convictions on the grounds stated herein, we decline to reach the other issues raised by appellants. -8-