**TABER PARTNERS I, Plaintiff**

v.

**INSURANCE COMPANY OF NORTH AMERICA, INC., Defendant.**

**TABER PARTNERS I, Plaintiff and Counterdefendant,**

v.

**MERIT BUILDERS, INC., Defendant, Counterclaimant & Third-party Plaintiff,**

v.

**VICTOR TORRES & ASSOCIATES, INC. and Desarrollos Metropolitanos, Inc., Third-party Defendants.**

Civ. Nos. 91–1220 (JP), 91–1211 (JP).

United States District Court, D. Puerto Rico.

Nov. 3, 1995.

Rubén T. Nigaglioni, Ledesma, Palou & Miranda, Hato Rey, P.R., for Plaintiff.

Eric Tulla, Rivera, Tulla & Ferrer, Hato Rey, P.R., for Defendant.

Edilberto Berríos Pérez, Hato Rey, P.R., for Víctor Torres.

Humberto Guzmán Rodríguez, Fiddler, González & Rodríguez, San Juan, P.R., for Desarrollos.

### ORDER

PIERAS, District Judge.

The Court has before it Taber Partners I's (hereinafter "Taber") motion for a new trial pursuant to Fed.R.Civ.Pro. 59(a)(1), Insurance Company of North America, Inc.'s (hereinafter "INA") opposition, Merit Builders, Inc.'s (hereinafter "Merit") opposition, and Desarrollos Metropolitanos, Inc.'s (hereinafter "Desarrollos") opposition (docket Nos. 550, 555, 557 and 558).

## I. TABER'S ALLEGATIONS

Taber makes two allegations from which it contends that the jury was biased. First, plaintiff insinuates that the wife and daughter of the president of defendant company, Angela Schlump and Joan Schlump Peters, respectively, intimidated or influenced the jury in a prejudicial manner through their conduct during the trial. Next, Taber alleges that a juror who had been excused from the jury panel engaged in ex parte communications with members of the jury prior to the beginning of deliberations, and thereby prejudiced the jury verdict. Taber submitted an affidavit signed by Mr. Eugene Romano, the principal owner and controlling director of plaintiff corporation, with its motion for a new trial stating that he has personal knowledge of the following. An individual juror, Mr. Solivan–Rolán, was excused by the Court from jury service before August 1, 1995. On August 22, 1995, the day before the jury began deliberations, Mr. Romano asserts that he saw Mr. Solivan–Rolán return to the courthouse around 1:30 p.m., and allegedly enter the jury room. Mr. Romano further asserts that he saw members of the jury return from their lunch recess, and enter the passageway that led to the jury room. From these facts, Taber infers that Mr. Solivan–Rolán spoke with members of the jury.

Taber contends that any ex parte contact with the jury is presumptively prejudicial. Taber furthermore suggests that Mr. Solivan–Rolán, the juror, was perhaps related to defense witness Juan Gilberto Sullivan, who testified in lieu of Mr. A.J. Samaritano on August 4, 1995. From this possible familiar relationship, Taber argues that Mr. Solivan–Rolán was prejudiced in favor of defendants and thereby any comments Mr. Solivan–Rolán might have made in the jury's presence could have prejudicially influenced his fellow jurors against plaintiff.

## II. INA, MERIT AND DESARROLLOS'S ALLEGATIONS

INA, Merit, and Desarrollos (hereinafter referred to collectively as "defendants") oppose plaintiff's motion for the following reasons. First, defendants contend that plaintiff failed to bring this allegation of ex parte

juror communication to the attention of the Court in a timely manner, therefore plaintiff waived its right to request a new trial. Next, defendants contend that Taber's allegations constitute mere speculation that an ex parte communication occurred, and do not sufficiently state that there was actual prejudice of the members of the jury.

### III. DISCUSSION

█ It is well settled that when a party makes a non-frivolous suggestion that the jury could have been tainted or biased, and therefore reached a verdict based on something other than the admitted evidence and legal argument, the District Court shall investigate these allegations. *United States v. Gastón–Brito*, 64 F.3d 11 (1st Cir.1995). Plaintiff's first allegation of juror bias regarding the conduct of Mrs. Schlump and Mrs. Schlump Peters is both frivolous and late, thus it shall not be investigated further. Plaintiff's second allegation of juror bias regarding ex parte communication with the jury, however, is not frivolous and thus shall be investigated further.

Plaintiff's first allege that Mrs. Angela Schlump and Mrs. Joan Schlump Peters intimidated or influenced the jury in a prejudicial manner. On June 6, 1995, three jurors, Trinidad Román–Rivera (juror number 51), Dalizza Valdez (juror number 29), and Sandra Pinol–Nay (juror number 46) informed the Court that they felt uncomfortable due to Mrs. Schlump's and Mrs. Schlump Peters' behavior. Based upon the Court's interview in chambers of these three jurors, the Court stated for the record the following:

Good morning, ladies and gentlemen. I am entering an order this morning pertaining to the incident that occurred here which is a continuation of what has been happening.

Originally, Mrs. Angela Schlump sometime ago sat in the Court and in front of the jury applauded her husband while he was testifying, continuously staring at the jurors and commenting on the case. We agreed that that wasn't going to happen again and she was going to stay out and I did not want to make any issue of that matter. How it happened that she came back and I did not know it, but it did happen, this time with her daughter, Mrs. Peters.

Now, yesterday by my own observation and that of court witnesses, it appears that Mrs. Schlump and Mrs. Peters both stared at the jurors intensely, relentlessly, and at Mrs. Linda Romano. She made comments continuously. She called the witness a liar in a loud voice, referring to Witness Tipping. Three jurors have observed this continued staring and comments and feel ill at ease. Their concentration has been interrupted and I must say that mine also was interrupted because I was worried pertaining to what was going on.

As a matter of fact, my notes taken yesterday afternoon are not pretty good. This is a difficult case which requires the attention and concentration of everybody. And certainly we do not want any incident occurring which may cause a mistrial. Therefore it is the order of the Court that the Marshal shall not allow the entrance of Mrs. Angela Schlump or Mrs. Peters within the premises of this building of the courthouse and the adjacent facility known as Federal Building while this case is going on. With that in mind we are ready to go on. Transcript for June 6, 1995, docket No. 461 at 3–4 and docket No. 424.

The members of the jury were not sequestered at any point during the trial or deliberations. As recognized by the Supreme Court, "it is virtually impossible to shield jurors from every contact or influence that might theoretically influence their vote", *United States v. Boylan*, 898 F.2d 230, 261 (1st Cir.), *cert. denied*, 498 U.S. 849, 111 S.Ct. 139, 112 L.Ed.2d 106 (1990) (citing *Smith v. Phillips*, 455 U.S. 209, 217, 102 S.Ct. 940, 946, 71 L.Ed.2d 78 (1982)). As soon as the jurors notified the Court about the behavior of these two individuals, the Court took appropriate steps to protect the jury from outside prejudice by barring these two individuals from the courtroom.

█ Plaintiff is barred from bringing this allegations of prejudice as a basis for a new trial. This is not newly discovered evidence. If plaintiff feared that Mrs.

Schlump's and Mrs. Schlump Peter's behavior had actually constituted ex parte communication with the jury, then plaintiff should have asked the Court to interview all jurors at that specific moment in time to determine whether any individuals had actually been prejudiced, and whether this would bias their deliberations. Or plaintiff should have moved for a mistrial at that moment, if it felt that this conduct had detrimentally prejudiced the jury. The time for raising this contention of possible juror bias was at the moment in time when it occurred, not after the completion of a fourteen week trial, five days of juror deliberation and an adverse verdict. "[A] party who acquires information supportive of a claim for mistrial or new trial is precluded from such relief if, rather than presenting the matter promptly to the court, the party awaits the outcome of the trial and then, after losing, for the first time moves for relief." *Cool Light Co. v. GTE Prods. Corp.,* 832 F.Supp. 449, 459 (D.Mass.1993), *aff'd,* 24 F.3d 349 (1st Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 498, 130 L.Ed.2d 408 (1994).

Plaintiff's allegation of juror bias further relies upon the fact that two of the jurors who notified the Court about Mrs. Schlump's and Mrs. Schlump Peter's behavior were subsequently excused from jury service. On or about July 20, 1995, Trinidad Román–Rivera was excused from jury duty for personal reasons. Plaintiff did not object to her being excused. On August 14, 1995, juror Sandra Pinol–Nay was also excused from jury duty for personal reasons. Plaintiff did not object to her being excused.

On September 7, 1995, more than a month after the first juror was excused, plaintiff insinuates that reason why these two jurors were excused was because they had notified the Court about Mrs. Schlump and Mrs. Schlump Peters disruptive behavior. In the motion for a new trial, plaintiff describes the excusal of these two jurors as a "fortuitous coincidence beneficial to defendants", and requests that the Court investigate the circumstances surrounding this coincidence. Plaintiff's allegations, however, lack factual specificity. The Court personally interviewed these two individuals, and every juror who requested to be excused from jury duty, and

reached the decision to excuse these individuals because of the juror's personal needs. Plaintiff has not brought forth any evidence upon which it bases its contention that the jurors were excused from jury service because of their alleged prejudice against defendants.

For the foregoing reasons, the Court finds that plaintiff's first allegation of juror misconduct is a belated and frivolous suggestion of juror misconduct, and shall not be addressed further.

■ Plaintiff's second allegation regarding an ex parte communication with jury members constitutes a non-frivolous suggestion that the jury could have been tainted or biased. Plaintiff asserts that a previously impaneled juror who had served on the jury during several weeks of trial but who was excused from further service due to personal reasons, returned to the courthouse after he had been excused from jury service, and allegedly communicated with members of the jury about the case on the day prior to deliberations. If Mr. Solivan–Rolán did return to the jury room and discuss the case with members of the jury, then it is possible that the jurors relied upon this conversation in reaching their verdict. A fundamental principle underlying the American judicial system is that "conclusions to be reached in a case will be induced only by evidence and argument in open court, and not by any outside influence, whether of private talk or public print," *United States v. Boylan,* 698 F.Supp. 376, 384 (D.Mass.1988), *aff'd,* 898 F.2d 230 (1st Cir.1990) (quoting *Patterson v. Colorado,* 205 U.S. 454, 462, 27 S.Ct. 556, 558, 51 L.Ed. 879 (1907)). Therefore, this Court shall investigate plaintiff's allegations, in order to determine first, whether this alleged incident occurred and if so, whether it was prejudicial. *United States v. Ortiz–Arrigoitía,* 996 F.2d 436, 442 (1st Cir.1993), *cert. denied, Ortiz–Cameron v. United States,* —— U.S. ——, 114 S.Ct. 1368, 128 L.Ed.2d 45 (1994). The Court notes that had plaintiff brought these allegations to the Court's attention on the day that the events allegedly occurred, the Court would have been in a better position to interview the jurors before the verdict was reached.

The Court's investigation into plaintiff's allegations of ex parte communication shall be narrow in scope, circumscribed by Local Rules of the Court, the Federal Rules of Evidence, and binding legal precedent. It is a well recognized principle that once a jury has reached its verdict, the jurors shall not be questioned about their verdict. *See* Rule 322 of the Local Rules of Court ("[U]pon discharge of a jury ..., all attorneys, ..., are strictly prohibited from conducting any post-trial interview or interrogation of any juror taking part in that proceeding"). *See also United States v. Kepreos*, 759 F.2d 961, 967 (1st Cir.), *cert. denied*, 474 U.S. 901, 106 S.Ct. 227, 88 L.Ed.2d 227 (1985) ("[T]his Circuit prohibits the post-verdict interview of jurors by counsel, litigants or their agents except under the supervision of the district court, and then only in such extraordinary situations as are deemed appropriate"). Moreover, the Court ruled on the record that the parties were prohibited from interviewing jurors once they had been excused from jury service.

There are certain exceptional situations, however, where the interests of the litigant in a fair trial override society's interest in protecting jurors from questioning. *Boylan*, 698 F.Supp. at 385. Allegations of prejudicial ex parte communications constitute one such extraordinary situation, where questioning members of the jury may be appropriate. *Gastón–Brito*, 64 F.3d at 13. The questions posed to the jury, however, shall relate specifically to the allegations that extraneous prejudicial information was improperly brought to the jury's attention, and not to the manner in which the jurors reached their verdict. Fed.R.Evid. 606(b) ("[A] juror may not testify as to any matter or statement occurring during the course of the jury's deliberations ..., except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence brought to bear upon any juror").

The procedure through which the District Court conducts its investigation is flexible, to be determined on a case by case basis. *United States v. Corbin*, 590 F.2d 398,

400 (1st Cir.1979), *Boylan*, 898 F.2d at 258, *Ortiz–Arrigoitía*, 996 F.2d at 443. Considering the allegations in the case at bar, the Court shall begin the investigation by interviewing Mr. Solivan–Rolán, and Mr. Jesús M. Coriano, Court Security Officer in charge of the jury during deliberations, on November 15, 1995 at 9:30 a.m., about the following issues:

1. Whether Mr. Solivan–Rolán did enter the jury room on or about 1:30 p.m. of August 22, 1995.

2. Whether there were any members of the jury present in the jury room.

3. Whether Mr. Solivan–Rolán discussed the case with any jurors.

4. If Mr. Solivan–Rolán did not enter the jury room, did he talk with any of the jurors in the corridor leading to the jury room, to whom did he talk, and what was the substance of the conversation.

The parties shall submit any specific, proposed questions to be posed to these individuals on or before November 8, 1995. Although counsel for the parties are permitted to be present during the interviews of these individuals, counsel shall not participate directly in these interviews. *Ortiz–Arrigoitía*, 996 F.2d at 443. All court personnel shall be present during the hearing, including a court reporter, and a copy of the transcript shall form part of the record. After these interviews have been completed, the Court shall be in a position to decide whether any members of the jury or any other individuals should be interviewed to determine whether any extraneous influences prejudiced the jury.

IT IS SO ORDERED.