Coos
No. 96-849

## THE STATE OF NEW HAMPSHIRE

v.

## LEO RIDEOUT, JR.

February 25, 1999

*Philip T. McLaughlin*, attorney general (*Cynthia L. White*, senior assistant attorney general, on the brief and orally), for the State.

*Twomey & Sisti Law Offices*, of Chichester (*Mark L. Sisti* on the brief and orally), for the defendant.

THAYER, J. The defendant, Leo Rideout, Jr., appeals his conviction of one count of second degree assault, *see* RSA 631:2, I(a) (1996), arguing that the Superior Court (*Perkins*, J.) erred in denying his motion to set aside the verdict after a juror was aided by a prosecution witness in a medical emergency during deliberations. We reverse and remand.

The jury began its deliberations following morning recess on the second day of the defendant's trial. At approximately 3:15 p.m., the juror occupying the fifth seat (Juror 5) left the deliberation room and approached Deputy Sheriff Douglas Fletcher, who was seated near the deliberation room. Juror 5 informed Deputy Sheriff Fletcher that he was an insulin-dependent type I diabetic and needed his insulin immediately, but the insulin and his keys were locked inside his car.

The deputy sheriff promptly notified Sheriff Robert Loven, who contacted the Lancaster Police Department for assistance because his office lacked the tools necessary to unlock the juror's car. Juror 5 waited in the lobby with Sheriff Loven for the police. When the police arrived, Sheriff Loven realized that the responding officer, Paul Hood, had been a prosecution witness in the defendant's trial. Officer Hood was the only officer on duty at the time. After informing Officer Hood of the location of Juror 5's car, Sheriff Loven instructed Deputy Sheriff Jennifer Morin to escort Juror 5 outside. He warned Deputy Sheriff Morin and Juror 5 not to discuss the case.

Deputy Sheriff Morin waited across the street while Juror 5 walked to his car, and Officer Hood proceeded to unlock the vehicle. Juror 5 thanked Officer Hood, retrieved his keys and insulin, and returned to the deliberation room, again escorted by Deputy Sheriff Morin.

Less than one-half hour after Juror 5 returned to the deliberation room, the jury unanimously found the defendant guilty of second degree assault. Following the verdict, the trial judge and parties questioned Juror 5 in chambers regarding his interaction with Officer Hood. Juror 5 asserted several times that the incident had no influence upon his deliberations or his decision to find the defendant guilty.

The defendant subsequently filed a motion for a new trial and to set aside the verdict based on the contact between Juror 5 and Officer Hood. The trial court conducted an evidentiary hearing on November 25, 1996. The parties questioned several witnesses, including Sheriff Loven and Officer Hood, but none of the jurors.

The trial court denied the defendant's motion and sentenced him to a deferred term of two to four years.

On appeal, the defendant contends that the trial court's failure to grant his motion to set aside the verdict violated his right under the New Hampshire and United States Constitutions to a fair and impartial jury. "Because we believe the principles are the same and because we believe that the New Hampshire Constitution provides at least as much protection as does the Federal Constitution on this issue, we address the defendant's claims under State law, looking to federal law only for guidance." *State v. Weir*, 138 N.H. 671, 673, 645 A.2d 56, 57 (1994) (citation omitted); *see State v. Ball*, 124 N.H. 226, 231-32, 471 A.2d 347, 350-51 (1983).

█ The right of a defendant to be tried by a fair and impartial jury is a fundamental principle of our system of justice. *See* N.H. CONST. pt. I, art. 15; *Weir*, 138 N.H. at 673, 645 A.2d at 57. Accordingly, a juror found to be disqualified at any time before or during the trial should be removed from further service. *Weir*, 138 N.H. at 673, 645 A.2d at 57; *see also* RSA 500-A:12, II (1997) ("If it appears that any juror is not indifferent, he shall be set aside on that trial.")

Ordinarily, a juror is presumed impartial. *See State v. Bibb*, 626 So. 2d 913, 922 (La. Ct. App. 1993); *cf. State v. VandeBogart*, 136 N.H. 107, 111, 612 A.2d 906, 909 (1992) (presumption of prospective juror's impartiality). When a juror's impartiality is questioned, however, the trial court has a duty to determine whether or not the juror is indifferent. *See State v. Wellman*, 128 N.H. 340, 348, 513 A.2d 944, 949 (1986), *abrogated on other grounds by State v. Hughes*, 135 N.H. 413, 605 A.2d 1062 (1992). We recognize that this is a fact-specific determination and will not reverse the trial court's decision absent an abuse of discretion or a finding that the decision was against the weight of the evidence. *Id.* at 348, 513 A.2d at 949-50.

"[D]ue process does not require a new trial every time a juror has been placed in a potentially compromising situation." *Smith v. Phillips*, 455 U.S. 209, 217 (1982). When a party makes a colorable claim that a jury may be biased or tainted by extrinsic contact or communication, *see, e.g., United States v. Nazzaro*, 889 F.2d 1158, 1167-68 (1st Cir. 1989), the court must undertake an adequate inquiry to determine whether the alleged incident occurred and, if so, whether it was prejudicial. *United States v. Gaston-Brito*, 64 F.3d 11, 12 (1st Cir. 1995). The trial court has broad, though not unlimited, discretion to determine the extent and nature of its inquiry. *Id.*

■    Generally, in a criminal case, a defendant alleging juror bias bears the burden to demonstrate actual prejudice. *See Smith*, 455 U.S. at 215. Two forms of communication with jurors, however, are presumptively prejudicial. *United States v. O'Brien*, 972 F.2d 12, 14 (1st Cir. 1992). Both communications between jurors and *persons associated with the case* about matters unrelated to the case, *id.*; *but see United States v. Velasquez-Carbona*, 991 F.2d 574, 576 (9th Cir.), *cert. denied*, 508 U.S. 979 (1993) (prejudice not presumed where contact merely constitutes common courtesy to jurors), and unauthorized communications between jurors and others *about the case* are presumptively prejudicial. *O'Brien*, 972 F.2d at 14. When presumptively prejudicial communication occurs, the State has the burden to establish that the communication was harmless. *Id.*

Some of the factors relevant to determining prejudice are: (1) whether the matter pending before the court was discussed, *id.*; (2) whether the party involved was connected with the case and whether the juror knew of the connection, *id.*; (3) whether the party involved had a substantial role in the case, *id.*; (4) whether other jurors became aware of the communication or contact, *Hunley v. Godinez*, 975 F.2d 316, 320 (7th Cir. 1992); (5) whether the communication or contact extended over a prolonged period of time, *Simants v. State*, 277 N.W.2d 217, 223 (Neb. 1979); and (6) the point in deliberations the communication or contact occurred, *Hunley*, 975 F.2d at 320. Finally, the court should consider the effect of any pertinent instructions. *See, e.g., State v. Smart*, 136 N.H. 639, 658, 622 A.2d 1197, 1204-05, *cert. denied*, 510 U.S. 917 (1993).

Following the in-chambers inquiry and the evidentiary hearing, the trial court found that Sheriff Loven had warned Juror 5 not to discuss the case outside of the deliberation room and that this warning "arguably prevented Officer Hood and Juror 5 from discussing the case," and, in fact, did limit their brief conversation to matters related to unlocking the car. In addition, relying on statements by Juror 5 that he had already made up his mind as to the defendant's guilt before leaving the deliberation room, the court concluded that the interaction between Officer Hood and Juror 5 did not prejudice the juror against the defendant. The court did not make any findings as to whether Juror 5 had informed the other jurors about his interaction with Officer Hood.

We recognize the deference due to factual determinations of the trial court and do not fault the trial judge for not applying the standard we enunciate here. In light of the standard and the facts presented, however, we conclude that the State did not meet its

burden to show that the jury was not prejudiced by Juror 5's encounter with Officer Hood.

We begin by looking at the nature of the extrinsic contact. In this case, where a prosecution witness personally and directly rendered aid to a juror whose health was at imminent risk, the witness performed a special and substantial favor for the juror. *Cf. State v. Hunt*, 138 A.2d 1, 12-13 (N.J. 1958) (improper for prosecution witness to render medical aid to juror). Therefore, an evidentiary hearing was a proper mechanism to determine what contact occurred and whether it was prejudicial. *See Gaston-Brito*, 64 F.3d at 13. Further, because the contact involved communication between a juror and a prosecution witness, the incident was presumptively prejudicial. *See id.* Accordingly, the State bears the burden to rebut this presumption and prove that the incident and its effects were harmless. *See Remmer v. United States*, 347 U.S. 227, 229 (1953).

Several factors weigh in favor of a finding of harmlessness. First, the trial court found that Officer Hood and Juror 5 did not discuss the matter pending before the court. *See O'Brien*, 972 F.2d at 14-15. Second, Juror 5's own assertion of continued impartiality, favorably appraised by the court, is "not inherently suspect, for a juror is well qualified to say whether he has an unbiased mind in a certain matter." *United States v. Boylan*, 898 F.2d 230, 262 (1st Cir.) (quotations omitted), *cert. denied*, 498 U.S. 849 (1990). *But see Wellman*, 128 N.H. at 347-48, 513 A.2d at 949-50 (juror's prior statement that she could not serve as a juror after realizing familial connection to crime scene indicated her inability to be impartial despite her later protestations to the contrary). Finally, Juror 5's encounter with Officer Hood was brief, lasting only a few minutes. *Cf. Simants*, 277 N.W.2d at 223. In light of the State's burden to rebut the presumption of prejudice, the State must show these factors sufficiently outweigh the factors tending to show that Juror 5's encounter with Officer Hood affected the verdict.

▮ Several factors tend to show that the encounter could have affected the verdict. Despite Juror 5's assertion that he had already determined the defendant's guilt before he left the deliberation room, the effect of his encounter with Officer Hood on the other jurors is uncertain. Officer Hood was described by the trial court as "an important State witness," whose credibility and reliability, if believed by the jury, could only bolster the State's theory of the case. *Cf. Kelley v. State*, 555 N.E.2d 140, 141-42 (Ind. 1990) (noting jury may be unconsciously influenced by friendly association with State witnesses). According to Juror 5, the jury had not reached a verdict at the time he left. Less than one-half hour after he

returned, the jury unanimously found the defendant guilty. The court, without the benefit of our newly enunciated standard, did not hear any evidence or make any findings as to whether Juror 5 had informed the other jurors about his interaction with Officer Hood. Disclosure of Juror 5's encounter with this important State witness may well have contaminated the jury with extraneous information, threatening the integrity of its deliberations, and hence, its verdict. Because the State offered no evidence for the court to determine whether Juror 5 disclosed his encounter with Officer Hood to the other jurors and what effect, if any, such a disclosure would have had, the State failed to rebut the presumption of prejudice arising from the incident.

Because the passage of time makes reconstituting the jury impracticable, we reverse and remand for a new trial. Accordingly, we need not address the defendant's remaining argument.

*Reversed and remanded.*

All concurred.