Merrimack
No. 2003-266

DAVID ANDERSON

v.

PAULA SMITH

Argued: February 5, 2004
Opinion Issued: April 20, 2004

*Cassidy Law Office, PLLC*, of Concord (*James M. Cassidy* on the brief and orally), for the plaintiff.

*Soltani/Mosca PLLC*, of Epsom (*Edward C. Mosca* on the brief and orally), for the defendant.

DALIANIS, J. The plaintiff, David Anderson, received a jury verdict on his claims that the defendant, Paula Smith, violated her fiduciary duties of

good faith and due diligence in conducting a foreclosure sale. Smith appeals an order of the Superior Court (*Fitzgerald*, J.) denying her motion to set aside the verdict because of juror misconduct and awarding attorney's fees to Anderson. Anderson cross-appeals the superior court order setting aside the verdict, *sua sponte*, because of a conflict of interest between Smith and her counsel. We affirm in part and vacate in part.

We first address Anderson's cross-appeal. Because both parties agree that the trial court order setting aside the verdict based upon a finding of conflict of interest should be vacated, we vacate that order. We express no opinion as to whether or not such a conflict of interest exists.

Smith first argues that the verdict should have been set aside because a disqualified juror entered the jury room after the case was submitted to the jury. She contends that the alleged misconduct "touched upon the integrity of the deliberative process of the jury," and violated her right to a fair and impartial jury trial. *See* N.H. CONST. pt. I, art. 15.

A juror was disqualified after missing the second day of the trial. She contacted the court by telephone to inquire whether she should attend the third day of the trial, and, based upon the response, she mistakenly believed that she should. On the third and final day of the trial, she entered the jury room immediately before the jury entered the courtroom, sat in the jury box during closing arguments, and exited the courtroom with the other jurors. At the conclusion of the trial, Smith's counsel and the trial judge ascertained that an extra juror had been sitting in the jury box. The trial judge immediately sent the bailiff to excuse the disqualified juror.

Two months after the trial's conclusion, the trial court held an evidentiary hearing to determine whether the disqualified juror was present during or participated in any jury deliberations. The disqualified juror and the bailiff on duty the last day of the trial testified and both parties questioned them. At the request of the trial court, the bailiff had also submitted an affidavit approximately one week after the trial describing the events involving the disqualified juror. Upon the conclusion of the hearing, the trial court denied Smith's motions seeking post-trial relief from the verdict and/or a new trial.

"The denial of [Smith's] motion to set aside the verdict by necessary inference included a finding of fact that the trial was not rendered unfair by the alleged misconduct." *Lavigne v. Lavigne*, 80 N.H. 559, 561 (1923). The decision whether to set aside a jury verdict and grant a new trial lies within the discretion of the trial court. *See Brigham v. Hudson Motors, Inc.*, 118 N.H. 590, 593 (1978). The trial court's decision will not be overturned unless it is an unsustainable exercise of discretion. *See Johnston v. Lynch*, 133 N.H. 79, 85 (1990); *see also State v. Lambert*, 147

N.H. 295, 296 (2001) (explaining unsustainable exercise of discretion standard).

Smith contends that the disqualified juror had "substantial contact" with the rest of the jury after her disqualification. She relies upon *State v. Dushame* to argue that such contact touched "upon the integrity of the deliberative process of the jury" and, therefore, the verdict should be set aside. *State v. Dushame*, 136 N.H. 309, 315 (1992). We disagree.

In *Dushame*, a criminal case, the trial court substituted an alternate juror after final submission of the case to the jury, which "constituted a clear statutory violation" of the version of RSA 500-A:13 then in effect. *Id.* at 314. Although a criminal defendant is not granted relief absent a showing of prejudice, we held that that particular violation "touche[d] upon the integrity of the deliberative process of the jury and therefore require[d] special consideration." *Id.* at 315. The New Hampshire Constitution demands that twelve jurors "unanimously reach a verdict of guilty before a defendant's liberty may be compromised." *Id.* We concluded that the alternate juror in *Dushame* was ineligible pursuant to the version of RSA 500-A:13 in effect at that time and, therefore, was unavailable for recall by the court; thus, only eleven qualified jurors determined the defendant's fate. *Id.* On that basis, the verdict could not stand. *Id.*

By contrast, this is a civil case in which there is no clear statutory violation that calls into question the integrity of the jury's deliberations. Furthermore, the trial court gave careful consideration, including holding a hearing and accepting additional pleadings, in determining whether the deliberations were, in fact, affected by the presence of the disqualified juror.

■ The disqualified juror testified that she was "whisked out" of the jury room upon the conclusion of the trial and that she was "definitely" removed before any deliberations took place. She also stated that she was "clear" that there was no discussion during the time that she was in the jury room after the trial's conclusion. The bailiff testified that after he led the jury into the deliberation room, he immediately returned there, at the direction of the trial court, to escort the disqualified juror out of the room. Additionally, the jury verdict form shows "no deliberation" next to her name. Based upon the evidence, the trial court's finding that the disqualified juror's brief presence in the jury room did not affect the fairness or impartiality of the jury trial and did not warrant a new trial is a sustainable exercise of discretion.

■ Smith contends that the trial court erred by not instructing the jury to recommence deliberations and in failing to give appropriate supplemental instructions after the disqualified juror was removed from the jury room. She argues that the trial court thereby violated RSA 500-A:13, V (1997) and denied her a fair and impartial jury trial. The statutory safeguards set out in RSA 500-A:13, V, however, relate to the substitution of alternate jurors, *see Opinion of the Justices (Alternate Jurors)*, 137 N.H. 100 (1993), which did not occur in this case. Furthermore, the trial court found that the disqualified juror did not participate in any deliberations, because deliberations had not yet begun. Under these circumstances, we conclude that the trial court complied with the necessary safeguards to ensure a fair and impartial jury trial.

Smith next argues two constitutional claims. She contends that the disqualified juror's testimony revealed that the jury had engaged in deliberative activity on the first day of trial and, therefore, denied her right to a fair and impartial jury trial guaranteed by the New Hampshire Constitution and the Federal Constitution. *See* N.H. CONST. pt. I, art. 15; U.S. CONST. amend. VII, XIV. Additionally, she argues that her due process rights were violated by the trial court's failure to hold the evidentiary hearing until two months after the trial's conclusion and its limitation of witnesses to the disqualified juror and the bailiff. *See* N.H. CONST. pt. I, art. 15; U.S. CONST. amend. XIV. We first address her claims under the State Constitution, and cite federal opinions for guidance only. *State v. Ball*, 124 N.H. 226, 231-33 (1983).

At the evidentiary hearing, the trial court questioned the disqualified juror about the alleged discussions. *See State v. Rideout*, 143 N.H. 363, 365 (1999). "We recognize that this is a fact-specific determination and will not reverse the trial court's decision," unless it is an unsustainable exercise of discretion. *Id.*

■ The disqualified juror testified that prior to the judge's instruction to the jury not to discuss the case until its completion, there had been "minimal" conversation that did not involve substantive issues because "there wasn't really a lot of information" revealed to the jury at that point. She stated that after the jury was instructed not to discuss the case, they did not talk about it at all. The trial court found that there was no misconduct that resulted in an unfair or partial jury, and denied Smith's motion. This is a sustainable exercise of discretion based upon the evidence.

Smith's next constitutional claim is that her due process rights were violated by the trial court's failure to hold the evidentiary hearing until two

months after the trial's conclusion and by limiting the witnesses to the disqualified juror and the bailiff.

■ Smith alleged jury misconduct because a disqualified juror had substantial contact with the jury which resulted in an unfair trial. "When a party makes a colorable claim that a jury may be biased or tainted by extrinsic contact or communication, the [trial] court must undertake an adequate inquiry to determine whether the alleged incident occurred and, if so, whether it was prejudicial." *Id.* (citation omitted). The trial court "has broad discretion to determine the type of investigation which must be mounted. The trial judge may, but need not, convene a fullblown evidentiary hearing. Rather, his primary obligation is to fashion a responsible procedure for ascertaining whether misconduct actually occurred and if so, whether it was prejudicial." *State v. Bader*, 148 N.H. 265, 280 (2002), *cert. denied*, 123 S. Ct. 1945 (2003) (quotation omitted).

■ The trial court conducted an evidentiary hearing at which the disqualified juror testified and was available for examination by both parties. The bailiff who was assigned to the jury also testified. Additionally, the trial court had procured an affidavit from the bailiff shortly after the trial, and accepted pleadings and motions from both parties pending a decision. The fact that the evidentiary hearing occurred two months after the trial's conclusion and included only two witnesses was within the trial court's "discretion to determine the nature and extent of its inquiry into the situation." *Id.* at 279. We cannot conclude that the trial court's decision was an unsustainable exercise of discretion. Thus, Smith's right to due process was not violated.

The Federal Constitution offers Smith no greater protection than does the State Constitution under these circumstances. *See Bader*, 148 N.H. at 280; *Rideout*, 143 N.H. at 365; *United States v. Boylan*, 898 F.2d 230, 258 (1st Cir. 1990), *cert. denied*, 498 U.S. 849 (1990). Accordingly, we reach the same result under the Federal Constitution as we do under the State Constitution.

Smith next challenges the trial court's award of attorney's fees to Anderson. In setting aside the verdict on the basis of conflict of interest, the trial court ordered: "Regardless of the outcome of the new trial, defendant shall remain responsible for reasonable attorney's fees and costs incurred by the plaintiff as part of the first trial and the post-trial litigation as neither the plaintiff nor his attorney should suffer from the acts of defendant and her counsel."

■■ An award of attorney's fees "must be grounded upon statutory authorization, an agreement between the parties, or an established exception to the rule that each party is responsible for paying his or her own counsel fees." *Clipper Affiliates v. Checovich*, 138 N.H. 271, 278 (1994) (quotation and brackets omitted). We have recognized an exception where "an individual is forced to seek judicial assistance to secure a clearly defined and established right if bad faith can be established." *Id.* (quotation omitted). We will not overturn a trial court's award of attorney's fees unless it is an unsustainable exercise of discretion. *See id.*

■ The trial court awarded attorney's fees pursuant to the jury verdict in favor of Anderson. The jury returned a verdict that Smith breached her duty of good faith in her conduct of the foreclosure sale; however, the special verdict form did not specifically ask whether there was a finding of bad faith conduct. We need not decide whether the finding of a breach of good faith necessarily results in a finding of bad faith because Smith concedes in her brief that the jury made a finding of bad faith when it returned a verdict against her. The trial court ascertained attorney's fees in the amount of $9,487.25 for fees and costs related to the litigation that followed Smith's foreclosure. She argues that because the trial court vacated the jury verdict without making a subsequent specific finding of bad faith, the award of attorney's fees must be reversed. The award of fees pursuant to the jury verdict falls within a recognized exception and, with the reinstatement of the jury verdict, is permissible and sustainable.

Finally Smith argues that the trial court erred when ruling that Smith's counsel may not represent or assist her in a new trial. As we have vacated the trial court's order of a new trial based upon a conflict of interest, and affirmed the trial court's order denying Smith's motions for a new trial, this issue is moot.

*Affirmed in part; vacated in part.*

NADEAU and DUGGAN, JJ., concurred; HORTON, J., retired, specially assigned under RSA 490:3, concurred.