Merrimack
No. 2005-461

## The State of New Hampshire

v.

## Clinton Brown

Submitted: September 13, 2006
Opinion Issued: November 3, 2006

*Kelly A. Ayotte*, attorney general (*David W. Ruoff*, assistant attorney general, on the brief), for the State.

*Sisti Law Offices,* of Chichester (*Mark L. Sisti* on the brief), for the defendant.

DALIANIS, J. The defendant, Clinton Brown, appeals his convictions following a jury trial for incest, *see* RSA 639:2 (Supp. 2005), and aggravated felonious sexual assault, *see* RSA 632-A:2, I(m) (1996) (amended 2003), III (1996). He argues that the Superior Court (*Fitzgerald,* J.) erred when it failed to declare a mistrial because one of the jurors engaged in misconduct. We affirm.

The record reflects the following relevant facts. The trial began on March 21, 2005. Three days later, a bailiff told the trial court that Juror 7 had expressed concerns about something another juror had said on the previous day. When questioned, Juror 7 said that Juror 6 had told other jurors that she "enjoyed spending her lunch . . . sitting in her car in the parking lot watching people involved in the trial when they didn't know they were being watched and when they were in their own environment." According to Juror 7, Juror 6 told other jurors that she found doing this to be "informative."

After Juror 7 spoke to the court, the court decided to *voir dire* Juror 6. Both counsel participated in the *voir dire.* Juror 6 told the court: "I was in my car, eating lunch, and I just noticed that the defendant was leaving. And I thought it was interesting that they allowed us to go out and then the—everyone else was left to go later so we couldn't interfere—interact with them." When asked if she had made some comment about this to her fellow jurors, Juror 6 said, "Yeah. I just said that I saw them leaving." She told the court that she guessed that the defendant was with his family, but that she did not know "who everybody was, it was just a group of people with him." When further questioned, Juror 6 said that she had no idea who the people were, "mostly I saw the backs of them." Juror 6 said that she did not reach any conclusions based upon her observations. She said that she thought that she told "maybe a couple of the jurors—that I did see people—[the defendant] leaving with a group of people at lunchtime and it was after we had already been excused."

Thereafter, the court decided to *voir dire* all of the jurors individually "to see what they heard in the first instance." Both counsel were permitted to question the jurors during the *voir dire.* Five jurors, Jurors 1, 3, 4, 11 and 13, denied hearing any juror make any comments about any observations that juror may have made. Eight jurors, Jurors 2, 5, 7, 8, 9, 10, 12 and 14, recalled hearing Juror 6's comments. When asked, Jurors 5, 7, 8, 9, 10, 12 and 14 all affirmed their ability to remain impartial and reach a fair verdict in the case based only upon the evidence presented in the courtroom. Juror 2 was not asked this question.

Juror 2 recalled that "[o]ne of the ladies said something about sitting in her car and just watching people," but he did not believe that this juror was making this comment to any juror in particular. According to Juror 2, the other jurors were "coming back in" to the jury room after their lunch break when the juror made her comments. Juror 2 said that the comments of the other juror meant nothing to him.

Juror 5 stated that Juror 6 said that the people she saw in the parking lot "just looked like anybody else, like normal people." Like Juror 2, Juror 5 also said that not all the jurors had returned from lunch break when this "offhand" comment was made.

The court then spoke to Juror 7 again. Juror 7 explained that Juror 6's exact comments were as follows: "You know what I like to do at lunch? I go and spend lunchtime sitting in my car where I can sit there, no one knows I'm there, and I get to watch all the people that are involved in the trial in their environment when they don't know they're being watched. I find that to be very informative." Juror 7 said that after Juror 6 made this statement, everyone in the jury room "shut up and nobody would even make eye contact with her." Juror 7 said that Juror 6 made her comments loudly enough so that everyone in the jury room would hear them. He believed that all of the jurors were in the jury room when Juror 6 made her comments.

Juror 8 said that she heard Juror 6 say that it was "interesting to see people out of [the courtroom], how they interact outside."

Juror 9 said that he had heard a statement by another juror that the juror "saw some people [in the trial] standing outside the courtroom . . . when she was in her car eating lunch." Juror 9 stated that although other jurors were in the jury room when the juror made this comment, he did not know if they heard it "because everybody[] [was] in there talking things, [there was] a lot of laughing going on." He said that the other jurors were "[a]bout as spread out as you can get" inside the jury room when the comment was made. After the juror made the comment, someone else said that the jurors could not "talk anything about the case, and [the subject] was dropped and nothing else was said."

Juror 10 recalled hearing one of the jurors "saying that she was sitting in her car, eating her lunch, and . . . that she was kind of . . . crouched down so . . . she didn't make any contact with anybody . . . . So . . . she just sat in her car, ate her lunch and then came back in." She heard the juror say, "[I]t's weird seeing everybody out there, you know, outside of the case. . . . [W]hen they're not up on the stand . . . it's kind of odd seeing them out in real-life situations." After hearing this comment, Juror 10 "just looked away . . . and continued reading [her] magazine." Juror 10 said that the juror who made the comment did not say whom she saw or refer to the

people she saw as witnesses. Juror 10 said that she had "no clue who [the juror] was looking at."

Juror 12 said that he thought that one of the jurors "said she just saw some family members milling around out[side] and she was sitting in her car ... eating or something." Juror 12 stated that the juror was not specific about whom she saw, and said that when the juror made the comment, other jurors might not have heard it because there were other conversations going on at the time.

Juror 14 heard another female juror "make a comment that they ate their lunch in the car and they saw someone in the parking lot or something." The juror was not specific about whom she saw and did not identify the person as a witness, lawyer, judge or bailiff.

Following the *voir dire* of the jurors, the defendant moved for a mistrial. The trial court denied this motion. Although the court found that Juror 6 engaged in misconduct that was presumptively prejudicial, the court found, beyond a reasonable doubt, that this misconduct would not affect the jury's verdict. The court excused Juror 6, and the trial continued for several days. The jury ultimately returned a guilty verdict.

On appeal, the defendant argues that the trial court's decision deprived him of his state and federal constitutional rights to an impartial jury. *See* N.H. CONST. pt. I, art. 15; U.S. CONST. amends. VI, XIV. We first address the defendant's assertion under the State Constitution, *see State v. Ball*, 124 N.H. 226, 231 (1983), citing federal authority for guidance only, *id.* at 233.

"It is axiomatic that a defendant has a right to be tried by a fair and impartial jury." *State v. Bathalon*, 146 N.H. 485, 487 (2001). Any juror found to be disqualified before or during trial should be removed. *Id.*; *see* RSA 500-A:12, II (1997). "We have previously decided that when there is also an allegation that a juror has been biased by extrinsic contact or communication, the trial court must undertake an adequate inquiry to determine whether the alleged incident occurred and, if so, whether it was prejudicial." *Bathalon*, 146 N.H. at 487 (quotation and brackets omitted).

In a criminal case, a defendant must prove actual prejudice, although such prejudice is presumed when there are communications between jurors and individuals associated with the case or when the juror's unauthorized communications with others are about the case. *Id.* In those instances, the burden shifts to the State to prove that any prejudice was harmless beyond a reasonable doubt. *Id.*

Some of the factors relevant to determining whether the panel was prejudiced are: (1) whether the matter pending before the court was

discussed; (2) whether the party involved was connected with the case and whether the juror knew of the connection; (3) whether the party involved had a substantial role in the case; (4) whether other jurors became aware of the communication or contact; (5) whether the communication extended over a prolonged period of time; and (6) the point in the deliberations when the communication or contact occurred. *State v. Rideout*, 143 N.H. 363, 366 (1999). We review the trial court's fact-specific determinations for an unsustainable exercise of discretion. *See State v. Bader*, 148 N.H. 265, 279 (2002), *cert. denied*, 538 U.S. 1014 (2003).

The trial court presumed prejudice from Juror 6's observations of individuals associated with the trial and her communication with fellow jurors about her observations. As the trial court's decision to presume prejudice has not been challenged on appeal, we assume, without deciding, that the court did not err by doing so. Accordingly, we review whether the trial court unsustainably exercised its discretion when it found that any prejudice was harmless beyond a reasonable doubt and therefore denied the defendant's motion for mistrial.

The trial court found that, at worst, Juror 6 had expressed an opinion, based upon her observations, that certain witnesses looked "normal." The court found that Juror 6 did not know which witnesses she had observed and did not communicate anything that would identify them to her fellow jurors. The court further determined, after conducting individual *voir dire* of the remaining jurors, that their ability to be impartial was not affected by what Juror 6 had said. As the record supports these findings, we uphold them.

We further uphold the trial court's determination that the State sufficiently rebutted the presumption of prejudice that arose from the incident. *See Rideout*, 143 N.H. at 367-68. Here several factors weigh in favor of finding harmlessness. *See id.* at 367. First, Juror 6 had no communications with either the witnesses or her fellow jurors about the case at hand. Second, although the individuals Juror 6 observed were connected with the case, and although Juror 6 knew this, she did not know who they were and did not communicate anything that would identify them to her fellow jurors. By contrast, in *Rideout*, the individual with whom the juror had contact was identified by name and, according to the trial court, was "an important State witness." *Id.*

Third, while some of the jurors heard Juror 6's statements about her observations, others did not. As the court observed: "A number of jurors noted that there were 14 people in the room, that there was more than one conversation going on, that they were in various parts of the room when certain things occurred." The court stated that it had "no basis to discredit

the testimony of any juror who said they simply did not hear any comment whatsoever."

Fourth, there was no evidence that the juror's contact with the witnesses and her communications about them occurred over a "prolonged period of time." *Id.* at 366.

Finally, the incident with Juror 6 occurred on only the second day of trial, when the State had called only five of its eleven witnesses. By contrast, the contact between the juror and the witness at issue in *Rideout* occurred while the jury was in deliberations. *Id.* at 364. Less than one-half hour after the juror in *Rideout* returned to the jury room, the jury unanimously found the defendant guilty. *Id.* at 367-68.

Under these circumstances, we uphold the trial court's determination that any prejudice presumed from Juror 6's observations and communications was harmless beyond a reasonable doubt. Accordingly, we find no error in the trial court's denial of the defendant's motion for a mistrial. As the Federal Constitution offers the defendant no greater protection than does the State Constitution under these circumstances, *see id.* at 365, we reach the same result under the Federal Constitution as we do under the State Constitution.

*Affirmed.*

BRODERICK, C.J., and DUGGAN, GALWAY and HICKS, JJ., concurred.